**Rosa NATIVIDAD, Petitioner,**

v.

**ALEXSIS, INC., and William Steen, Respondents.**

**No. D–2786.**

Supreme Court of Texas.

April 28, 1994.

Rehearing Overruled June 8, 1994.

---

Karen A. Lerner, Houston, for petitioner.

Frederick B. Wulff, Sr., Kurt Schwarz, Elizabeth Hosch, Dallas, for respondents.

GONZALEZ, Justice, delivered the opinion of the Court, in which PHILLIPS, Chief Justice, and HECHT, CORNYN and ENOCH, Justices, join.

A workers' compensation claimant filed suit against an adjusting firm and a claims adjuster employed by the firm, alleging, among other things, breach of the duty of good faith and fair dealing. The trial court rendered a summary judgment in favor of the defendants. The court of appeals reversed and remanded, holding that an adjusting firm owes the same duty of good faith and fair dealing as an insurance carrier. 833 S.W.2d 545. We disagree. The non-delegable duty of good faith and fair dealing is owed by an insurance carrier to its insureds due to the nature of the contract between them giving rise to a "special relationship." An insurance carrier, not its agents and contractors providing claims handling services, is liable to the insured for actions by the agents or contractors that breach the duty of good faith and fair dealing owed by the carrier to the insured. For the following reasons, we reverse the judgment of the court of appeals.

## FACTS

Rosa Natividad was injured twice within a year while in the course of her employment with Revco D.S., Inc. She filed a workers' compensation claim for each injury. Both claims were settled. On February 24, 1989,

Natividad filed suit alleging various causes of action arising from the handling of her workers' compensation claims by Revco, National Union Fire Insurance Company of Pittsburgh, AIG Risk Management, Alexsis, Inc., and William Steen. National Union was Revco's workers' compensation carrier. National Union contracted to have AIG provide all the services under the policy. AIG contracted with Alexsis, Inc. for claims adjusting services under the policy. William Steen, a claims adjuster, was an employee of Alexsis, Inc. Natividad settled with National Union, AIG, and Revco, and dismissed them from the suit.[1] Natividad's Fifth Amended Petition asserted the following causes of action against Alexsis, Inc. and Steen: 1) breach of the duty of good faith and fair dealing; 2) fraud; 3) economic duress, oppression and outrage; 4) negligent infliction of emotional distress; and, 5) extreme and outrageous conduct which caused severe emotional distress as set forth in Section 46 of the Second Restatement of Torts.[2]

Alexsis, Inc. and Steen moved for summary judgment on the grounds that they did not owe a duty of good faith and fair dealing to Natividad and that Natividad could not recover for her emotional distress. The trial court rendered a take-nothing summary judgment in favor of the defendants.

The court of appeals reversed the summary judgment in part. Although there were no pleadings and evidence to support the theory, the court of appeals held that Natividad was a third-party beneficiary of a contract between Alexsis, Inc. and National Union, and that Alexsis, Inc. owed Natividad a duty of good faith and fair dealing.[3] However, the court of appeals held that Steen did not owe a duty of good faith and fair dealing because "[h]e did not issue an insurance policy and did not contract with the carrier ...

1. Payments on the compensation claims totalled $44,589.36 and the settlements totalled $77,500.

2. A cause of action for a violation of Section 16 of Article 21.21 of the Texas Insurance Code was not properly before the trial court. *See* 833 S.W.2d at 549.

3. 833 S.W.2d at 547. Alexsis, Inc. employed Steen to perform some of the tasks under Alexsis,

Inc.'s contract with AIG. There was no contract between Alexsis, Inc. and National Union. If Alexsis, Inc. and Steen were negligent in processing Natividad's claim for workers' compensation benefits, they breached a contractual duty owed to AIG. If anyone was a third-party beneficiary of the contract between Alexsis, Inc. and AIG, it was National Union.

to provide any adjusting services."[4] The court of appeals upheld summary judgment favoring Alexsis, Inc. and Steen as to Natividad's allegations of fraud, and of economic duress, oppression and outrage, but remanded Natividad's causes of action for negligent and intentional infliction of emotional distress.

On appeal to this Court, Natividad argues that the court of appeals erred in holding that Steen did not owe Natividad a duty of good faith and fair dealing. By cross-application, Alexsis, Inc. and Steen argue that because the duty of good faith and fair dealing must be based on a contract between the parties, neither Alexsis, Inc. nor Steen owed Natividad this duty. Alexsis, Inc. and Steen also argue that the uncontroverted affidavit testimony of Steen was sufficient to support summary judgment on the claims for negligent and intentional infliction of emotional distress, and that summary judgment of Natividad's claim of intentional infliction of emotional distress was otherwise proper because they negated other elements of her claim.

## DUTY OF GOOD FAITH AND FAIR DEALING

Rosa Natividad asks this Court to extend the common-law duty of good faith and fair dealing which we first recognized in *Arnold v. National County Mutual Fire Insurance Company*, 725 S.W.2d 165 (Tex.1987), to bind entities and individuals in the insurance industry that are not in contractual privity with the claimant. Because the existence of a contract, vesting the insurer with "exclusive control over the evaluation, processing, and denial of claims," *Id.* at 167, that gives rise to a "special relationship" is a necessary element of the duty of good faith and fair dealing, we decline to do so.

Since its inception, the duty of good faith and fair dealing has only been applied to protect parties who have a special relationship based on trust or unequal bargaining power. *See Arnold*, 725 S.W.2d at 167. In the insurance context, this special relationship arises out of "the parties' unequal bargaining power and the nature of insurance contracts which would allow unscrupulous insurers to take advantage of their insureds...." *Id.; see also, Viles v. Security Nat'l Ins. Co.*, 788 S.W.2d 566 (Tex.1990); *Aranda v. Insurance Co. of N. Am.*, 748 S.W.2d 210 (Tex.1988); *Chitsey v. National Lloyds Ins. Co.*, 738 S.W.2d 641 (Tex.1987).[5]

When this Court applied the duty of good faith and fair dealing to the workers' compensation relationship in *Aranda*, 748 S.W.2d at 212, we continued to focus on the special relationship created by the contractual relationship of the parties: the employer, the employee, and the insurance carrier. We stated:

> The Workers' Compensation Act sets forth a compensation scheme that is based on a three-party agreement entered into by the employer, the employee, and the compensation carrier.... As between the compensation carrier and the employee, there is a promise for a promise: the carrier agrees to compensate the employee for injuries sustained in the course of employment, and the employee agrees to relinquish his common law rights against his employer. The employee is thus a party to the contract and therefore entitled to recover in that capacity.
>
> The contract between a compensation carrier and an employee creates the same type of special relationship that arises under other insurance contracts.

*Id.* (citations omitted).

The duty of good faith and fair dealing emanates from the special relationship be-

---

**4.** 833 S.W.2d at 548. The same can be said about Alexsis, Inc. Alexsis, Inc. did not issue an insurance policy and did not contract with National Union to provide any adjusting services. Thus, under the rationale of the court of appeals, *there is no principled reason to extend the duty to Alexsis, Inc. but not to Steen.*

**5.** This Court in *Arnold* stated:
While this court has declined to impose an implied *covenant* of good faith and fair dealing

in every contract, we have recognized that a duty of good faith and fair dealing may arise as a result of a special relationship between the parties governed or created by a contract.

*Arnold*, 725 S.W.2d at 167; *see also English v. Fischer*, 660 S.W.2d 521, 524 (Tex.1983) (Spears, J. concurring) ("I would note ... that Texas courts have read a duty of good faith and fair dealing into many types of *contractually based transactions.*") (emphasis added).

tween the parties and not from the terms of the contract, therefore its breach gives rise to tort damages and not simply to contractual liability.[6] However, the "special relationship" exists only because the insured and the insurer are parties to a contract that is the result of unequal bargaining power, and by its nature allows unscrupulous insurers to take advantage of their insureds. *Arnold,* 725 S.W.2d at 167. Without such a contract there would be no "special relationship" and hence, no duty of good faith and fair dealing.

■ The court of appeals and the Dissent look to *Scott Wetzel Services, Inc. v. Johnson,* 821 P.2d 804 (Colo.1991), to support extending the duty of good faith and fair dealing to the agents of insurance carriers. Their reliance on this case is misplaced. In *Wetzel,* 821 P.2d at 812, the court imposed a duty of good faith based on policy goals contained in that state's *compensation act.* In contrast, as set out above, we have always recognized that in an insurance context, the duty of good faith and fair dealing arises only when there is a *contract* giving rise to a "special relationship."

■ In the present case, there is no special relationship between Natividad and either Alexsis, Inc. or Steen. Natividad is not a party to a contract with Alexsis, Inc. or Steen. Natividad's contractual privity is only with her employer and National Union. Natividad is owed a duty of good faith and fair dealing from National Union. This duty is non-delegable.[7] When the insurance carrier has contracted with agents or contractors for the performance of claims handling services, the carrier remains liable for actions by those agents or contractors that breach the duty of good faith and fair dealing owed to the insured by the carrier. Natividad was entitled to and did recover from National Union for actions by its employees, agents or contractors that breached the duty of good faith and fair dealing owed to Natividad by

National Union. Alexsis, Inc. and Steen, because they were not parties to a contract with Natividad giving rise to a "special relationship," owed Natividad no duty of good faith and fair dealing. Thus, the court of appeals was correct in affirming the trial court's summary judgment as to Natividad's claim for breach of the duty of good faith and fair dealing against Steen. The court of appeals erred, however, in reversing the trial court's summary judgment as to Natividad's claim for breach of the duty of good faith and fair dealing against Alexsis, Inc.

### EMOTIONAL DISTRESS

The trial court granted a motion for summary judgment by Alexsis, Inc. and Steen on Natividad's claims for negligent and intentional infliction of emotional distress. The motion came after special exceptions filed by Alexsis, Inc. and Steen, alleging that Natividad's pleadings were factually and legally insufficient. The court of appeals reversed the judgment of the trial court as to the claims for emotional distress. Subsequent to the court of appeals decision, this court in *Boyles v. Kerr,* 855 S.W.2d 593, 594 (Tex. 1993), held that in Texas, there is no tort of *negligent* infliction of emotional distress. In *Twyman v. Twyman,* 855 S.W.2d 619, 621–22 (Tex.1993), we recognized the tort of *intentional* infliction of emotional distress, and adopted the elements set forth in Section 46 of the Second Restatement of Torts. The court of appeals thus erred in reversing the trial court's summary judgment that Natividad take nothing on her claim for negligent infliction of emotional distress against Alexsis, Inc. and Steen. As to the tort of intentional infliction of emotional distress, affidavits were attached to the Motion for Summary Judgment stating that Steen had no intention of causing Natividad any emotional distress. The trial court granted summary judgment against Natividad's claim for emo-

---

6. *See Viles,* 788 S.W.2d at 567. Contrary to suggestions by the Dissent, our opinion today does not deviate from our earlier opinion in *Chitsey,* 738 S.W.2d at 643 n. 1, that the duty of good faith and fair dealing is not an implied covenant, but a duty imposed by law.

7. Contrary to the Dissent's suggestion, today's opinion does not shield insurance companies from responsibility for their actions. By imposing a non-delegable duty of good faith and fair dealing on insurance companies we are sending a clear message—the buck stops with them. The insurance companies must answer for the "sins" of their agents.

tional distress, but the court of appeals reversed the judgment stating that Steen's supporting affidavit "will not support a summary judgment where he is a party to the suit with a vital interest in its outcome." 833 S.W.2d at 549 (citing *Spoljaric v. Percival Tours, Inc.,* 708 S.W.2d 432 (Tex.1986)). Alexsis, Inc. and Steen argue to this Court that summary judgment is proper because Natividad's live pleadings did not allege any "extreme and outrageous" conduct by either Alexsis, Inc. or Steen. Additionally, Alexsis, Inc. and Steen argue that the court of appeals erred in holding that Steen's affidavit that he did not intend to cause Natividad emotional distress does not support summary judgment.

■ Summary judgment based on a pleading deficiency is proper if a party has had an opportunity by special exception to amend and fails to do so, or files a further defective pleading. *Texas Dept. of Corrections v. Herring,* 513 S.W.2d 6, 10 (Tex.1974); TIMOTHY PATTON, SUMMARY JUDGMENTS IN TEXAS § 3.07[2] (1992); David Hittner and Lynne Liberato, *Summary Judgments in Texas,* 35 S. TEX.L.REV. 9, 25 (1994). A review of the pleadings in such case is *de novo,* with the reviewing court taking all allegations, facts, and inferences in the pleadings as true and viewing them in a light most favorable to the pleader. *See Aranda,* 748 S.W.2d at 213. The reviewing court will affirm the summary judgment only if the pleadings are legally insufficient.

In the present case, Alexsis, Inc. and Steen filed special exceptions to Natividad's pleadings alleging factual and legal insufficiency. The trial court ordered Natividad to file an amended petition to address the deficiencies in her pleadings specially excepted to by Alexsis, Inc. and Steen. In response, Natividad filed her Fifth Amended Petition. Summary judgment is therefore proper if no fact issue exists as to whether the conduct of Alexsis, Inc. and Steen was " 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " *Twyman,* 855 S.W.2d at 621 (quoting RESTATEMENT (SECOND) OF TORTS § 46, cmt. d (1965)).

" 'It is for the court to determine in the first instance whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery.' " *Wornick Co v. Casas,* 856 S.W.2d 732, 734 (Tex.1993) (quoting RESTATEMENT (SECOND) OF TORTS § 46, cmt. h). In this case, Natividad has not pleaded sufficient facts concerning the conduct of Alexsis, Inc. and Steen to proceed beyond the summary judgment stage.

■ Natividad relies on the following allegations to support her claim of outrageous conduct: her benefit checks were delayed and, when issued, were drawn on an out-of-state bank; defendants gave her the "runaround" when she and her lawyer attempted to inquire about the payments, putting her on "hold" and fabricating excuses of lost files and computer malfunctions; and she was treated rudely. These allegations, taken as true, may constitute bad faith, giving rise to a cause of action against the insurer. They cannot, however, reasonably be regarded as so extreme as to "go beyond all possible bounds of decency." *See* RESTATEMENT (SECOND) OF TORTS § 46, cmt. d. Rude behavior does not equate to outrageousness, and behavior is not outrageous simply because it may be tortious. *Id.* If the conduct involved here can be considered outrageous for the purposes of creating liability for the tort of intentional infliction of emotional distress, then it appears that *any* instance of insurance bad faith will also raise a fact issue on intentional infliction of emotional distress. Courts in other jurisdictions have properly rejected this approach. *See, e.g., Wooley v. Shewbart,* 569 So.2d 712, 717 (Ala.1990) (allegation that compensation carrier denied benefits for no reason shortly before insured's surgery does not state a claim of outrageous conduct); *Farley v. CNA Ins. Co.,* 576 So.2d 158, 160 (Ala.1991) (evidence that compensation carrier gave claimant the "runaround" and did not timely pay her bills did not establish claim for outrageous conduct); *Davis v. Gulf Life Ins. Co.,* 502 So.2d 1012 (Fla.Dist.Ct.App.1987) (insurer's arbitrary refusal to pay a valid claim does not constitute outrageous conduct); *Roberts v. Auto-Owners Ins. Co.,* 422 Mich. 594, 374 N.W.2d

905, 911 (1985) (insurer's failure to facilitate filing of claim and denial of valid benefits claim was not outrageous); *Hajciar v. Crawford & Co.*, 142 Mich.App. 632, 369 N.W.2d 860, 864 (1985) (insurer's termination of benefits in order to coerce a lump sum settlement was not extreme and outrageous for purposes of the intentional infliction tort); *Reamsnyder v. Jaskolski*, 10 Ohio St.3d 150, 462 N.E.2d 392, 394 (1984) (insurer's pressuring of insured to accept settlement offer, along with threats of premature termination of benefits, was not outrageous).

It does not appear that any jurisdiction has recognized the element of outrageous conduct as satisfied on allegations as slender as those of Natividad.[8] Accordingly, we reverse the judgment of the court of appeals and render judgment that Natividad take nothing on her claim for intentional infliction of emotional distress. Our disposition of this issue makes it unnecessary to reach the issue of whether Steen's affidavit supports summary judgment.

### CONCLUSION

There is no need to extend the duty of good faith and fair dealing owed by insurance carriers to their insureds to include agents or contractors of the insurance carrier. Insurance carriers are liable for actions of their agents or contractors that breach the duty of good faith and fair dealing. We reverse the judgment of the court of appeals and render judgment that Rosa Natividad take nothing in her suit against defendants Alexsis, Inc. and William Steen.

GAMMAGE, Justice, joined by HIGHTOWER, DOGGETT and SPECTOR, Justices, concurring in part and dissenting in part from the opinion and concurring in part and dissenting in part from the judgment.

I dissent from the majority's holding that the duty of good faith and fair dealing does not extend to both National Union and its adjusting company, Alexsis. This court has never held that privity between the parties is a necessary talisman giving rise to the duty of good faith and fair dealing.[1] Moreover, this court, unlike other jurisdictions which require privity, has declined to base the duty on an implied covenant in contract. *Arnold v. Nat. County Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex.1987), *citing English v. Fischer*, 660 S.W.2d 521, 522 (Tex.1983); *cf. Gruenberg v. Aetna Ins. Co.*, 9 Cal.3d 566, 108 Cal.Rptr. 480, 510 P.2d 1032 (1973). By its decision today to require contractual privity, the majority blurs the distinction between the breach of a covenant in contract and the breach of a duty arising from a relationship, ironically a distinction Justice Gonzalez, the author of the majority opinion, earlier felt worthy of note. *See Chitsey v. National Lloyds Ins. Co.*, 738 S.W.2d 641, 643 n. 1 (1987).

The duty of good faith and fair dealing "emanates not from the terms of the insurance contract, but from an obligation imposed in law 'as a result of a *special relationship* between the parties *governed or created* by a contract.'" *Viles v. Security National Ins. Co.*, 788 S.W.2d 566, 567 (Tex.1990). Here, although there is no contract between Natividad and the insurance company's agent, Alexsis, there is a contract whereby Alexsis promised to handle the claims of Revco employees in accordance with the terms of the policy issued by National Union. Consequently, when Alexsis directly dealt with Natividad the relationship was *governed* by the workers' compensation insurance contract.

---

**8.** The Court is in agreement that, "the specific facts of this case do not rise to the level of 'extreme and outrageous conduct' necessary for a claim of intentional infliction of emotional distress." 875 S.W.2d 702 (Gammage, J. concurring and dissenting). However, the facts alleged do give rise to a fact issue for breach of the duty of good faith and fair dealing. As noted in footnote 1, Natividad settled that claim with National Union.

**1.** *See e.g. Manges v. Guerra*, 673 S.W.2d 180 (1984). There, we held that the special relationship between an executive mineral rights owner and the nonexecutive owners gave rise to the duty of utmost good faith. The contract in that case, however, was between Manges and the Guerra *partnership*, not the individual nonexecutive owners. *Manges*, 673 S.W.2d at 181.

In addition, Natividad stands as beneficiary under Alexsis' contract.[2] Natividad, entitled to timely benefits provided by law to employees injured on the job, may actually have received the funds from National Union, "but the responsibility to see that those funds were properly and timely paid rested upon Alexsis." *Natividad*, 833 S.W.2d at 547. The majority attempts to discount this reality by arguing that Natividad failed to plead a third party beneficiary theory. What is important, however, is not whether Natividad is actually a third party beneficiary, but whether the chain of contracts from National Union to Alexsis, delegating the duties owed to Natividad, created a "special relationship" between Natividad and National Union's agent. *See Viles*, 788 S.W.2d at 567.

A special relationship is one "marked by shared trust or an imbalance in bargaining power." *F.D.I.C. v. Coleman*, 795 S.W.2d 706, 708–709 (Tex.1990). This court has declared that such a relationship exists between a claimant and the employer's workers' compensation carrier. *Aranda v. Insurance Co. of N. America*, 748 S.W.2d 210, 212 (Tex. 1988). The majority states that this relationship arises from the unequal bargaining power of the parties to the contract. The duty of good faith and fair dealing, however, is meant to protect the insured from that power which is wielded *after* the contract is made. "[W]ithout such a cause of action insurers can arbitrarily deny coverage and delay payment of a claim with no more penalty than interest on the amount owed." *Arnold*, 725 S.W.2d at 167; *Aranda*, 748 S.W.2d at 212. In *Arnold*, we reasoned that "[a]n insurance company has exclusive control over the evaluation, processing and denial of claims" and can use that control in such a way that would subject the insured to "economic calamity." *Arnold*, 725 S.W.2d at 167; *Aranda*, 748 S.W.2d at 212.

Here, the exclusive control which we found so threatening is held not by the carrier, but by its agent, Alexsis. National Union delegated to Alexsis its own sole authority to handle individual Revco workers' compensation claims not exceeding $50,000. Alexsis exercised exclusive control over the evaluation, processing and denial of Natividad's particular workers' compensation claims. With such control, Alexsis was exclusively empowered to commit acts which could forestall the prompt payment or reasonable denial of claims. *See Scott Wetzel Services, Inc. v. Johnson*, 821 P.2d 804, 812 (Colo.1991). The reasoning for recognizing the duty to the covered employee from the employer's carrier extends as well to the carrier's agent, the adjusting company which deals directly with the employee. *See Aranda*, 748 S.W.2d at 212.

The majority concludes that because a carrier may be held liable for its agent's actions, no cause of action is necessary against the agents themselves. *See Wetzel*, 821 P.2d at 813 (Rovira, C.J., dissenting). The court in *Wetzel*, faced with this argument, acknowledged that to best serve the policy of the compensation act, the cause of action should serve to deter inappropriate conduct of the actor, here the agent who deals directly with the insured. *Wetzel*, 821 P.2d at 812. Attempting to distinguish *Wetzel*, the majority states the decision was based on Colorado's compensation act, which seeks to provide compensation through a "summary and speedy ... procedure." *See Wetzel*, 821 P.2d at 812. But doesn't our own compensation act seek to provide "speedy, equitable relief" so that injured employees are protected from the "economic calamity of disabling injuries"? *Aranda*, 748 S.W.2d at 212, *citing Texas Employers' Insurance Ass'n v. Wright*, 128 Tex. 242, 97 S.W.2d 171, 172 (1936).

Because I believe you must punish the actor to curb the actions, I respectfully dissent.[3] National Union *and* Alexsis have the

---

**2.** In *Aranda*, we recognized a legal fiction by holding that the insured employee is party to a tripartite agreement and exchanges a "promise for a promise" with the employer's insurance carrier. *Aranda v. Insurance Co. of N. America*, 748 S.W.2d 210, 212 (Tex.1988). When the carrier delegates his duty to fulfill that promise, the employee necessarily becomes a third party beneficiary under the delegation contract, here between National Union and AIG. Under the majority's holding, however, Natividad would not even have a cause of action against AIG, the entity which steps directly into the carrier's contractual relationship.

**3.** I would affirm the decision of the court of appeals that Steen, Alexsis' employee, does not owe the insured a personal duty of good faith

duty of good faith and fair dealing, whether the power derives from a contract with the insured or through a delegation of duties under the same contract.

I join that part of the majority opinion which deals with Natividad's claims of intentional infliction of emotional distress, with the following clarification. By this concurrence I give no credence to this court's previous holdings which effectively shield insurance companies from responsibility for their actions. I would allow Natividad her claim for the adjuster's breach of the duty of good faith and fair dealing which is denied by the majority holding. I would also allow Natividad her claims for negligent infliction of emotional distress which this court took away in *Boyles v. Kerr*, 855 S.W.2d 593 (Tex.1993). I concur with the majority only because the specific facts of this case do not rise to the level of "extreme and outrageous conduct" necessary for a claim of intentional infliction of emotional distress. Other insureds suffering the brunt of bad faith insurers, however, may very well be able to allege sufficient facts to meet the demands of this cause of action.

and fair dealing. The duties under the insurance contract were delegated to Alexsis. Alexsis merely ordered its employee, Steen, to perform the duties held by the adjusting firm. The duties, therefore, including the implied duty of good faith and fair dealing, stop with Alexsis.