**William C. DEAR and William C. Dear & Associates, Inc., Appellants,**

v.

**SCOTTSDALE INSURANCE COMPANY, Paul B. Van Ness, Johnson & Sylvan, P.C., And Hammerman & Gainer, Inc., Appellees.**

No. 05–95–00705–CV.

Court of Appeals of Texas, Dallas.

March 13, 1997.

---

Robert M. Clark, Clark & Seay, Dallas, Jennifer S. Riggs, Jennifer S. Riggs, P.C., Austin, for Appellants.

Gary D. Lykins, Russell H. Roden, Gwinn & Roby, Dallas, Stephen E. Friend, D. Bradley Dickinson, Judy K. Shore, Vial Hamilton Koch & Knox, L.L.P., Dallas, for Appellees.

Before KINKEADE, WHITTINGTON and HANKINSON, JJ.

## OPINION ON MOTION FOR REHEARING

HANKINSON, Justice.

On our own motion, we withdraw our November 1, 1996 opinion and substitute this opinion. We also vacate our November 1, 1996 judgment.

William C. Dear and William C. Dear & Associates, Inc. (collectively referred to as

"Dear") appeal the grant of summary judgments in favor of Scottsdale Insurance Company ("Scottsdale"), Hammerman & Gainer, Inc. ("H & G"), and Paul B. Van Ness ("Van Ness") and Johnson & Sylvan, P.C. In the trial court, Dear alleged that appellees improperly investigated, handled, and settled lawsuits filed against Dear, which were covered by a Scottsdale professional liability insurance policy. In three points of error, Dear contends the trial court erroneously granted summary judgment because appellees failed to negate conclusively the various contractual, tort, and statutory causes of action that he asserted. In an additional point of error, Dear contends the trial court erroneously sustained Van Ness and Johnson & Sylvan's and Scottsdale's objections to affidavits Dear filed in opposition to their motions for summary judgment. In a cross-point of error, Scottsdale argues that the trial court erroneously denied one ground for its motion for summary judgment because, as a matter of law, Dear could not prove damages. We affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

## FACTS

William C. Dear operates as a private investigator through William C. Dear & Associates, Inc. Scottsdale issued a professional liability insurance policy to Dear. The policy provided that Scottsdale had the right and duty to defend lawsuits alleging professional liability filed against Dear. The policy expressly and unambiguously permitted Scottsdale to investigate and settle any covered claims against Dear as Scottsdale deemed expedient.

In 1987, Barbara Russo retained Dear to investigate the death of Dan Beckon, a Canadian jockey. After Dear began his investigation, Russo apparently became dissatisfied, claiming Dear overcharged her and fraudulently and negligently investigated Beckon's death. In 1990, Russo sued Dear. Dear notified Scottsdale of Russo's lawsuit, and Scottsdale agreed to defend Dear. Scottsdale retained the law firm of Johnson & Sylvan to represent Dear. Van Ness, an attorney employed by Johnson & Sylvan, was assigned to defend Dear. Scottsdale also retained H & G

to do independent adjusting work in connection with the Russo litigation. H & G is an independent adjusting firm that never had a contractual relationship with Dear.

Dear also retained a personal attorney, Paul Leech, to represent him in the Russo litigation. Leech filed and pursued a counterclaim against Russo seeking damages for nonpayment of fees, extortion, blackmail, loss of personal and business reputation, loss of business, breach of contract, slander, attorney's fees, and punitive damages.

The trial court ordered the Russo litigation to mediation. The parties mediated the case three times. The last mediation occurred on September 9, 1991. Jean Nelson, Scottsdale's representative, participated by telephone. Dear, Leech, and Van Ness attended the mediation in person. Russo made a policy limits settlement demand for $300,000. When informed of this demand, Dear objected to settling the litigation and refused to consent to any settlement. Dear and Leech left the mediation before it concluded.

During the mediation, the mediator telephoned Nelson and advised her that Scottsdale would be well advised to accept Russo's policy limits demand of $300,000. The mediator told Nelson that, based on the evidence, he believed that a jury might find against Dear and award Russo significant damages. Nelson accepted Russo's demand to settle within the policy limits for $300,000, in exchange for a full release of Dear's potential liability. Dear did not release his counterclaim against Russo. In deciding to settle this litigation, Nelson considered the mediator's opinions, questions of fact on the liability issues, and the likelihood of a large jury award.

On September 19, 1991, Van Ness telephoned Leech and told him that Scottsdale had settled Russo's claims. On September 20, 1991, Russo and Dear finalized the settlement documents, and the trial court entered an agreed order of dismissal. Leech pursued Dear's counterclaim against Russo to verdict in an October 1992 trial.

In March 1992, Chloe Hafford and John and Bess Gill sued Dear. Hafford, who is Russo's mother, alleged in her lawsuit that

Dear conducted an intensive and intrusive investigation of her life in retaliation for her daughter's suit against Dear. The Gills claimed in their lawsuit that Dear committed improprieties while investigating their daughter's disappearance.

Scottsdale again provided Dear coverage and a defense. Scottsdale also settled the Hafford and Gill claims after mediation for $10,000 and $20,000, respectively. The settlement agreement reflects that: (1) Hafford and the Gills intended to settle their claims against Dear and released Dear; (2) Dear refused to pay any money to settle those claims; (3) Scottsdale paid money to settle claims that Hafford and the Gills asserted against Scottsdale; and (4) Hafford, the Gills, Dear, and Scottsdale agreed to keep the settlement terms confidential unless compelled to make disclosure by subpoena or other compulsory process. Scottsdale later released loss runs that showed losses paid to Hafford and the Gills on Dear's behalf.

## PROCEDURAL BACKGROUND

On September 20, 1993, Dear filed this lawsuit. He claimed that Scottsdale's, H & G's, and Van Ness and Johnson & Sylvan's conduct caused him damages, including loss of business and reputation, mental anguish, and physical pain. Dear specifically claimed that their course of conduct made it more difficult and more expensive to obtain professional liability insurance, which is statutorily required for him to operate as a private investigator. Dear alleged multiple causes of action against each appellee.

### Scottsdale

Dear sued Scottsdale, alleging that Scottsdale negligently: (1) investigated, handled, and settled claims filed against him; and (2) reported the Gill and Hafford settlements as claims paid on Dear's behalf. Dear also contended that Scottsdale tortiously interfered with his contract with Johnson & Sylvan and Van Ness; breached its contract with Dear to provide a defense in the Russo litigation; and breached its agreement not to disclose the Hafford and Gill settlements in Dear's loss runs. Finally, Dear claimed that Scottsdale's conduct breached its duty of good faith

and fair dealing and violated the Texas Deceptive Trade Practices Act ("DTPA"). Scottsdale moved for summary judgment, asserting three grounds: (1) it had an absolute right to settle the Russo, Hafford, and Gill claims; (2) a reasonable basis for settling those claims existed; and (3) Dear could not, as a matter of law, establish any damages caused by Scottsdale's conduct.

### Hammerman & Gainer

Dear contended that H & G negligently investigated and evaluated Russo's claims and then changed its evaluation of the case based on pressure from Van Ness. Dear then alleged that in doing so, H & G tortiously interfered with his relationship with his attorneys. Dear further alleged that H & G's conduct constituted a breach of its contract with Scottsdale to evaluate Russo's claims and that Dear was a third-party beneficiary to that contract. Finally, Dear claimed that the manner in which H & G investigated, handled, or settled Russo's claims breached its duty of good faith and fair dealing and the DTPA. H & G moved for summary judgment, asserting as a matter of law that: (1) H & G owed no duty to Dear; (2) no contractual relationship existed between H & G and Dear; and (3) Scottsdale had an absolute legal right to settle Russo's claims.

### Van Ness and Johnson & Sylvan

Finally, Dear alleged that Van Ness and Johnson & Sylvan negligently: (1) investigated the facts of the Russo litigation and facts regarding Russo herself; (2) settled Russo's claims without a confidentiality agreement; and (3) settled Russo's claims without Dear's consent and against his express wishes. This conduct, according to Dear, influenced Scottsdale's decision to settle Russo's claims and constituted tortious interference with Dear's contractual relationship with Scottsdale. Dear also maintained that the manner in which Van Ness and Johnson & Sylvan investigated, handled, and settled Russo's claims breached their fiduciary duty and their duty of good faith and fair dealing. Dear finally contended that this conduct constituted a breach of contract and a DTPA violation.

Van Ness and Johnson & Sylvan moved for summary judgment, asserting: (1) they did not settle Russo's claims, Scottsdale did; (2) they did not breach any duty owed to Dear while they defended him in the Russo litigation; (3) the doctrines of collateral estoppel and res judicata prevented relitigation of the claims that Dear alleged; (4) the statute of limitations barred Dear's action; (5) Texas does not recognize a cause of action against an attorney for breach of contract or breach of the duty of good faith and fair dealing; and (6) Texas does not recognize a cause of action for alleged violation of the disciplinary rules of professional conduct.

The trial court granted appellees' motions for summary judgment, except on those grounds relying on collateral estoppel, res judicata, and Dear's inability to prove damages.

## STANDARD OF REVIEW

This Court reviews a summary judgment de novo to determine whether a party's right to prevail is established as a matter of law. *See Capitan Enters., Inc. v. Jackson*, 903 S.W.2d 772, 775 (Tex.App.—El Paso 1994, writ denied). An appellate court follows well-established procedures when reviewing a summary judgment. *See Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985).

## SCOTTSDALE'S MOTION FOR SUMMARY JUDGMENT AND CROSS–POINT OF ERROR

■ In his fourth point of error, Dear argues that the trial court erred in granting Scottsdale's motion for summary judgment on his causes of action related to Scottsdale's decision to settle the claims asserted against him by Russo. Dear contends that even though his insurance policy contained a clause giving Scottsdale the right to settle any claim or suit as it "deems expedient," Scottsdale had no absolute right to handle claims as it saw fit or settle claims within the

policy's liability limits. Dear argues that in handling and settling the Russo claim within the policy limits, Scottsdale was obligated to satisfy the duty of good faith and fair dealing, or at least to act non-negligently. Dear further contends that because Scottsdale did not conclusively prove that its conduct satisfied the duty of good faith and fair dealing and that it was not negligent, it was not entitled to judgment as a matter of law.

We disagree with Dear's basic contention—that an insurer does not have an absolute right to settle third-party claims within policy limits when the insurance policy expressly provides that the insurer may do so when it "deems expedient." Consequently, we decline to extend any extra-contractual theories of recovery to allow an insured recovery against an insurer who, pursuant to the express terms of its policy, settles a third-party claim within the insurance policy's liability limits.[1]

Whether Scottsdale had an absolute right to settle Russo's claims depends on an interpretation of Scottsdale's insurance policy. General contract rules of construction control the interpretation of insurance policies. *Glover v. National Ins. Underwriters*, 545 S.W.2d 755, 761 (Tex.1977). Absent ambiguity, courts give the words used their plain meaning. *Yancey v. Floyd West & Co.*, 755 S.W.2d 914, 918 (Tex.App.—Fort Worth 1988, writ denied). Scottsdale issued an insurance policy to William C. Dear d/b/a William C. Dear & Associates that provided:

> [Scottsdale] shall have the right and duty to defend any suit against the insured seeking damages on account of such injury even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient. . . .

This language unambiguously vests Scottsdale with an absolute right to settle third-party claims in its own discretion and without

---

1. Dear's breach of contract, negligence, bad faith, and DTPA claims regarding settlement of Russo's claims all depend on the allegations that Scottsdale improperly investigated Russo's claims and settled them without Dear's consent.

Because we conclude that Scottsdale had an absolute right to settle Russo's claims within the policy limits, all of these claims—no matter how phrased—must fail as a matter of law.

Dear's consent, even if the allegations of the suit are groundless, false, or fraudulent.

▆▆ We refuse to engraft any consent requirement onto this policy. Courts will not rewrite the language of the parties' unambiguous contract. *Bair v. Voelker Realty Co.*, 589 S.W.2d 867, 869 (Tex.Civ.App.—Dallas 1979, no writ) (citing *Renfro Drug Co. v. Lewis*, 149 Tex. 507, 531, 235 S.W.2d 609, 624 (1950)). By purchasing an insurance policy that did not provide him the right to veto settlement of third-party claims, Dear gave up the right to complain that any settlement Scottsdale entered somehow damaged him. Had Dear desired to prohibit Scottsdale from settling disputed claims without his consent, he could have purchased a policy requiring his consent. Dear chose not to purchase a "consent clause" policy, and we will not rewrite the policy to provide Dear with a provision for which he did not bargain.

▆ Dear alternatively argues that even if his insurance policy gave Scottsdale a contractual right to settle Russo's claims without his consent, Scottsdale could still be liable if it breached the duty of good faith and fair dealing or acted negligently when it investigated and settled Russo's claims. Dear first argues that regardless of the policy's language, Scottsdale owed him a duty of good faith and fair dealing when investigating and settling Russo's claims. We disagree. The Texas Supreme Court recently ruled that an insurer owes its insured no duty of good faith and fair dealing to investigate and defend claims made by a third party against the insured. *Maryland Ins. Co. v. Head Indus. Coatings & Servs., Inc.*, 938 S.W.2d 27, 27–29 (1996) (per curiam). In that case, the insurer denied coverage and refused to defend its insured in a premises liability case filed against the insured. *Id.* at 27–28. Refusing to recognize a duty of good faith and fair dealing under the facts before it, the Texas Supreme Court held "that Texas law recognizes only one tort duty in [third-party insurance cases], that being the duty stated in *Stowers Furniture Co. v. American Indem. Co.*, 15 S.W.2d 544 (Tex. Comm'n App.1929, holding approved)." *Id.* at 28–29 (quoting *Texas Farmers Ins. Co. v. Soriano*, 881 S.W.2d 312, 317 (Tex.1994) (Cornyn, J., concurring)). According to this tort duty, "[i]f an insurer refuses an offer of settlement when it appears that an ordinary prudent person in the insured's situation would have settled, the insurer may be held liable in damages." *Ranger County Mut. Ins. Co. v. Guin*, 723 S.W.2d 656, 659 (Tex.1987) (citing *G.A. Stowers Furniture Co. v. American Indem. Co.*, 15 S.W.2d 544, 547 (Tex. Comm'n App.1929, holding approved)). We therefore conclude that Scottsdale owed Dear no duty of good faith and fair dealing.

▆ Dear next contends that, regardless of the unambiguous policy language, Scottsdale can be liable if it negligently investigated Russo's third-party claims and then based its decision to settle on its negligent investigation. Relying on *Ranger County Mutual Insurance Co. v. Guin*, 723 S.W.2d 656 (Tex. 1987), and *American Physicians Insurance Exchange v. Garcia*, 876 S.W.2d 842, 849 (Tex.1994), Dear contends that Scottsdale owed him a duty of ordinary care when investigating Russo's claims and responding to Russo's demand to settle within the policy's liability limits. While we recognize that the supreme court has broadly opined that an insurer must act with ordinary care when investigating and settling third-party claims, neither *Ranger* nor *Garcia*, when taken in context, impose any duties (other than those agreed on in the policy) on an insurer that accepts a demand to settle within the policy's liability limits pursuant to the policy's "deems expedient" clause.

In both *Ranger* and *Garcia*, the insured (or its assignee) sued the insurer because the insurer rejected a third-party's demand to settle its claims against the insured within the policy's liability limits. By rejecting the settlement demand, the insurer exposed the insured to any assessed liability in excess of the policy's liability limits. In both cases, judgments were entered after trial for an amount in excess of the policy's liability limits and the insured sued under the *Stowers* doctrine. *Garcia*, 876 S.W.2d at 843 n. 2; *Ranger*, 723 S.W.2d at 659. In both *Ranger* and *Garcia*, the supreme court discussed imposing a duty of ordinary care on the insurer in the context of determining whether the insurer should be liable for the amount of the

judgment in excess of the policy's liability limits.[2] *See Garcia,* 876 S.W.2d at 844–45; *Ranger,* 723 S.W.2d at 657–58; *Wheelways Ins. Co. v. Hodges,* 872 S.W.2d 776, 780 (Tex. App.—Texarkana 1994, no writ) (describing *Ranger* as extending the *Stowers* doctrine to impose liability on an insurer to its insured "for a judgment *in excess of the policy limits* when caused by the insurer's negligent handling of the claim" (emphasis added)).

■ The policy reasons that support imposing a duty of ordinary care on the insurer when it refuses to settle a third-party's claims within the policy's liability limits do not support imposing a concomitant duty when the insurer accepts a third party's demand to settle within the policy's liability limits. Courts fashioned the *Stowers* duty to avoid the effects of a conflict of interest between the insurer and its insured. This conflict arises because the insurer has sole control of settlement, but limited liability. When the insured faces exposure near or above the policy's liability limits, the insurer has little incentive to settle because even if, after trial, judgment is entered in excess of the policy's liability limits, its exposure remains limited by the policy terms. The insured can be exposed because it is obligated to satisfy any remaining portion of the judgment in excess of the policy's liability limits. *See* Kent D. Syverud, *The Duty to Settle,* 76 VA.L.REV. 1113, 1126–39 (1990) (describing the conflict of interest). To avoid this situation, Texas law imposes a duty on an insurer to accept a demand within the policy limits if an ordinarily prudent person managing his own business would have accepted that offer. *Soriano,* 881 S.W.2d at 314; *Stowers,* 15 S.W.2d at 547.

■ Dear seeks to expand the *Stowers* doctrine and impose liability in the reverse situation: when Scottsdale, by its own conduct, foreclosed the possibility that Dear would be held liable for a judgment in excess of its policy limits. Because no conflict of interest arose between Dear and Scottsdale, no need exists to impose any type of *Stowers,* or reverse *Stowers,* liability on Scottsdale. Under these facts, we decline to abrogate Scottsdale's contractual right to sole control over the settlement of third-party claims. Our reasoning leads us to conclude that Scottsdale had an unambiguous contractual right to settle the claims asserted against Dear and that it cannot be liable under any theory for exercising that right.[3] We overrule Dear's fourth point of error in part.

However, Scottsdale's motion for summary judgment did not address Dear's allegations that Scottsdale wrongfully disclosed the Hafford and Gill settlements on his loss runs.[4] None of the grounds that Scottsdale asserted in its motion for summary judgment can be interpreted to dispose of this remaining claim. Dear raised this deficiency in his response to Scottsdale's motion for summary judgment. Because we conclude that Scottsdale did not move for summary judgment on the limited claim that Scottsdale wrongfully divulged the Hafford and Gill settlements on Dear's loss runs, we grant Dear's fourth point of error in part as to that allegation only. *See* TEX.R.CIV.P. 166a(c); *McConnell v. Southside Indep. Sch. Dist.,* 858 S.W.2d 337, 341 (Tex.1993). We therefore must address Scottsdale's crosspoint of error solely to determine whether it entitles Scottsdale to judgment as a matter of law on this lone remaining allegation.

**2.** While we recognize that the *Ranger* court broadly stated that an insurer could be liable for negligent investigation, we note that the case did not involve a contention that the insurer negligently investigated any claims. *Ranger,* 723 S.W.2d at 659. Instead, the main contention in *Ranger,* unlike this case, involved the insurer's refusal to settle within the policy's limits. We decline to extend *Ranger* to fact situations other than those before that court.

**3.** While we recognize that in *Wood Truck Leasing, Inc. v. American Automobile Insurance Co.,* 526 S.W.2d 223, 224–25 (Tex.Civ.App.—San Antonio 1975, no writ), the Fourth District Court of Appeals did implicitly extend the *Stowers* duty in the manner Dear requests, we are not bound by that result and decline to follow that holding for the reasons stated in this opinion.

**4.** We note that Dear claimed that Scottsdale's conduct in reporting the Hafford and Gill settlements on loss runs constituted negligence, bad faith, breach of contract, and breach of the DTPA.

In its cross-point of error, Scottsdale argues that the trial court erroneously denied one ground for its motion for summary judgment. Scottsdale contended that Dear could not distinguish the damages that he sought in this suit from those damages he sought from the City of Irving in earlier-filed litigation. Scottsdale thus argued that Dear could not establish his damages as a matter of law. Having reviewed Scottsdale's cross-point of error and the record related to the only remaining claim in this litigation against Scottsdale, we disagree.

The pleadings and record in this case do not establish that Dear sought damages in this lawsuit identical to those he sought from the City of Irving in the earlier litigation. In his only remaining live claim against Scottsdale, Dear contends that Scottsdale improperly divulged the Hafford and Gill settlements on loss runs. According to Dear's pleadings, this act had two ramifications: (1) Dear experienced difficulty obtaining the professional liability insurance required by statute to maintain a private investigator's license; and (2) this statutorily-required insurance was more expensive for Dear. Dear seeks damages to compensate him for this alleged outcome.

In his litigation against the City of Irving, Dear contended that in 1989 the City of Irving secretly and improperly investigated his private life and business practices and published defamatory information, which, among other things, damaged his business reputation. Dear does not claim in his pleadings that the City of Irving impeded his ability to obtain reasonably priced professional liability insurance. Nor does his deposition, which Scottsdale submitted as summary judgment evidence, reflect that Dear made such a claim against the City of Irving. Because Dear never sought these damages from the City of Irving, Scottsdale's argument that Dear should be required to apportion these damages between Scottsdale and the City of Irving cannot be sustained. We conclude that the trial court properly denied summary judgment on this ground and overrule Scottsdale's cross-point of error.

## HAMMERMAN & GAINER'S MOTION FOR SUMMARY JUDGMENT

In Dear's first point of error, he argues that the trial court erroneously granted H & G's motion for summary judgment. According to Dear, H & G did not establish that it was entitled to summary judgment as a matter of law on each cause of action that Dear asserted below. We disagree.

Each cause of action Dear asserted against H & G relied on identical factual allegations that: (1) H & G failed to investigate Russo and her claims adequately before recommending settlement; and (2) H & G inexplicably changed its settlement recommendation to Scottsdale. Consequently, each of Dear's claims ultimately centered on the contention that H & G improperly investigated and evaluated Russo's claim. Dear, however, cites no case that holds an independent adjusting firm liable for improperly or negligently investigating a claim and recommending settlement. Case law instead counsels against imposing liability.

For example, in *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 698 (Tex.1994), the supreme court held that an independent adjusting firm did not owe an insured the duty of good faith and fair dealing. The supreme court explained that in the insurance context, the duty of good faith and fair dealing arises only when there is a contract giving rise to a special relationship. *Id.* Absent a contract, no special relationship exists and the adjusting firm could not, as a matter of law, owe the insured a duty of good faith and fair dealing. *Id.* Similarly, claims that an independent adjusting firm negligently investigated a claim against an insured must also fail as a matter of law. *See Bui v. St. Paul Mercury Ins. Co.*, 981 F.2d 209, 210 (5th Cir.1993) (affirming dismissal of negligent investigation claim against an independent adjuster because adjuster was not a party to the insurance contract and owed no duty to the claimant under Texas law).

Dear argues that, at most, *Natividad* and *Bui* dispose only of his allegations that H & G breached the duty of good faith and fair dealing. We disagree with Dear's characterization of these cases. *Bui*, on its face, disposes of a negligence claim against an inde-

pendent adjuster. Moreover, the rationale underlying *Natividad* compels the conclusion that the trial court properly dismissed the remainder of Dear's claims. Like H & G, the independent adjusting firm in *Natividad* had no contractual relationship with the insured, but merely performed adjusting services for the insurance carrier. The supreme court determined that the independent adjusting firm did not stand in the insurer's shoes and that the insurance carrier remained liable for the actions of the adjusting firm. *See Natividad*, 875 S.W.2d at 698.

 Dear contends that H & G cannot take advantage of this rule because it did not conclusively establish that it was Scottsdale's agent. Through Tim McGillicudy's affidavit, H & G established the following facts: (1) H & G is an independent adjusting firm; (2) Scottsdale retained H & G to act as an independent adjuster with regard to the Russo litigation; (3) H & G never entered into a contract with Dear regarding any of its actions in the Russo litigation; (4) H & G at no time had any contact, either written or oral, with Van Ness or Johnson & Sylvan; (5) H & G only performed work regarding the Russo litigation in its role as an independent adjusting firm; and (6) only Scottsdale paid H & G. Dear offered no evidence controverting these facts and instead admitted in his pleadings that H & G acted as Scottsdale's agent. This record leads us to conclude that H & G established its status as Scottsdale's agent or contractor.[5] We also conclude that H & G, an independent adjusting firm hired exclusively by Scottsdale, had no relationship with, and therefore owed no duty to, Dear. Absent such a relationship and concomitant duty, H & G could not be liable to Dear for improper investigation and settlement advice, regardless of whether Dear phrased his allegations as negligence, bad faith, breach of contract, tortious interference, or DTPA claims. The trial court properly granted

summary judgment as to all of Dear's claims against H & G. We overrule Dear's first point of error.[6]

## VAN NESS AND JOHNSON & SYLVAN'S MOTION FOR SUMMARY JUDGMENT

 In his third point of error, Dear contends that the trial court erroneously granted Van Ness and Johnson & Sylvan's motion for summary judgment because: (1) the two-year statute of limitations that applies to all claims based on legal malpractice does not bar his claims; and (2) genuine issues of material fact preclude judgment as a matter of law on his substantive allegations. We conclude that the trial court properly granted summary judgment because the statute of limitations barred all of Dear's claims. Consequently, we need not address whether Van Ness and Johnson & Sylvan met their summary judgment burden regarding Dear's substantive allegations. *See* TEX. R.APP.P. 90(a).

 A two-year statute of limitations governs all legal malpractice claims, regardless of whether the plaintiff couches them in terms of tort, contract, or another theory. *Willis v. Maverick*, 760 S.W.2d 642, 644 (Tex. 1988); *Mathew v. McCoy*, 847 S.W.2d 397, 400 (Tex.App.—Houston [14th Dist.] 1993, no writ); *see* TEX.CIV.PRAC. & REM.CODE ANN. § 16.003 (Vernon 1986 & Supp.1997). A legal malpractice cause of action accrues when the client sustains a legal injury or, in cases governed by the discovery rule, when the client discovers or should have discovered the facts establishing the elements of a cause of action. *Hughes v. Mahaney & Higgins*, 821 S.W.2d 154, 156 (Tex.1991); *Besing v. Vanden Eykel*, 878 S.W.2d 182, 184 (Tex. App.—Dallas 1994, writ denied). If the plaintiff fails to plead and prove facts suspending the operation of the statute of limita-

---

5. We note that *Natividad* did not specifically limit the scope of its protection to independent adjusters who satisfy the strict definition of agent. Instead, the supreme court included the insurer's agents and contractors within the scope of its holding. *Natividad*, 875 S.W.2d at 698.

6. Even if H & G somehow owed a legal duty to Dear, or could otherwise be held liable to Dear,

we would nevertheless overrule Dear's first point of error. H & G argued both in this Court, and in the court below, that it was entitled to summary judgment because Scottsdale had an absolute right to settle Russo's claims. Because we agree with that proposition, none of H & G's actions could have caused Dear any damage.

tions, the court applies the legal injury rule. *Hall v. Stephenson*, 919 S.W.2d 454, 465 (Tex.App.—Fort Worth 1996, writ denied); *see Hughes*, 821 S.W.2d at 156.

Dear did not plead the discovery rule; therefore, his cause of action accrued when he suffered a legal injury. Van Ness and Johnson & Sylvan conclusively established that Dear suffered a legal injury more than two years before he filed suit. Dear complained essentially that Van Ness and Johnson & Sylvan failed to investigate Russo's claims properly and consequently improperly advised settlement without Dear's consent and against his instructions. Any legal injury resulting from this complained-of conduct must have occurred at, or by, September 9, 1991, when Scottsdale agreed to settle Russo's claims. Because Dear did not file this action until September 20, 1993, it is time-barred.

■ Dear's claims would still be time-barred if he had raised the discovery rule in his pleadings. Dear knew, or should have known, no later than September 19, 1991, that Scottsdale had agreed to settle Russo's claims. In his affidavit, Van Ness testified that on September 19, 1991, he told Leech that Scottsdale agreed to settle Russo's claims against Dear on September 9, 1991. Dear did not controvert this evidence. Van Ness's conversation with Leech constitutes notice to Dear and therefore satisfies the discovery rule's notice requirement. *See Gulf Atl. Ins. Co. v. Hurlbut*, 749 S.W.2d 96, 98 (Tex.App.—Dallas 1985), *rev'd on other grounds*, 749 S.W.2d 762 (Tex.1987); *Northwestern Nat'l Casualty Co. v. Doucette*, 817 S.W.2d 396, 400 (Tex.App.—Fort Worth 1991, writ denied) (both noting that notice to an attorney is notice to the client employing him).

■ Although Dear concedes that a two-year statute of limitations applies to his claims, he contends that limitations was tolled until alternatively: March 2, 1993, when the judgment on his counterclaim became final; October 20, 1991, when the Agreed Order of Dismissal became final; or September 20, 1991, when the trial court entered the Agreed Order of Dismissal. Dear relies on *Hughes v. Mahaney & Hig-*

*gins*, 821 S.W.2d 154 (Tex.1991), and *Aduddell v. Parkhill*, 821 S.W.2d 158 (Tex.1991), *cert. denied*, 505 U.S. 1207, 112 S.Ct. 2998, 120 L.Ed.2d 874 (1992), for support. At oral argument, Dear admitted that if his reliance on *Hughes* and *Aduddell* is misplaced, then all his claims against Van Ness and Johnson & Sylvan were time-barred.

In *Hughes* and *Aduddell*, the supreme court held that "when an attorney commits malpractice in the prosecution or defense of a claim that results in litigation, the statute of limitations on the malpractice claim against the attorney is tolled until all appeals on the underlying claim are exhausted." *Hughes*, 821 S.W.2d at 157; *see Aduddell*, 821 S.W.2d at 159 (recognizing the rule announced in *Hughes*). Two specific policy reasons compelled this rule's adoption in *Hughes*. First, a plaintiff should not be forced to adopt a litigation position in the underlying case that inherently contradicts the litigation position that he must take in his malpractice action. Thus, the supreme court refused to require a plaintiff to argue on appeal that he should have prevailed on the underlying claim while, at the same time, arguing he lost the underlying litigation because his lawyer committed malpractice. *Hughes*, 821 S.W.2d at 156–57. Second, the statute of limitations is tolled for purposes of judicial economy and efficiency: the viability of the malpractice action depends on the outcome of the underlying action. If the claimant prevails on the underlying claim, his lawyer's malpractice, if any, caused no damages. *Id.* at 157 & n. 5. The facts in this case implicate neither rationale relied upon by the *Hughes* court.

■ Dear does not contend, and we find no evidence, that he would be faced with the type of conflict described in *Hughes* if the statute of limitations on his malpractice claims was not tolled. No such conflict would arise because, during the underlying litigation, Russo's claims were kept separate from, and independent of, Dear's counterclaim. Different lawyers handled each claim. Dear acknowledges that he hired Leech to prosecute his counterclaim against Russo, while Van Ness and Johnson & Sylvan defended Russo's claims. Leech, by deposition,

corroborated this division of responsibilities among the lawyers. In addition, neither Johnson & Sylvan nor Van Ness participated in, or controlled, the prosecution of Dear's counterclaims. Dear, through Leech, maintained exclusive control over his counterclaim before and after Scottsdale settled Russo's claims. A letter from Stephen W. Johnson, a Johnson & Sylvan lawyer, underscores that Leech independently handled Dear's counterclaim. Johnson wrote to Dear informing him that the manner in which Dear and his attorney prosecuted his claims against Russo was not a matter that involved Johnson & Sylvan. Dear's counterclaim and Russo's claims were also handled separately for settlement purposes. These facts compel the conclusion that Dear would never have been required to argue inconsistently as was the claimant in *Hughes.*

Nor was it possible that the counterclaim trial's outcome would render this action moot. Viability of Dear's malpractice action against Van Ness and Johnson & Sylvan did not depend on the counterclaim's outcome. The settled claims that gave rise to Dear's malpractice action were not part of that counterclaim. Russo's claims had been settled and thus were not subject to appeal. If any damage occurred from Van Ness and Johnson & Sylvan's alleged malpractice, damages were fixed upon the settlement of Russo's claims and nothing that occurred after Scottsdale agreed to settle those claims would affect the viability of Dear's malpractice claim. *Hughes* does not apply to the facts of this case. Thus, the statute of limitations began to run no later than September 19, 1991. Dear did not file this action until September 20, 1993, and it is consequently time-barred. We therefore overrule Dear's third point of error.

## OBJECTIONS TO SUMMARY JUDGMENT EVIDENCE

■ In his second point of error, Dear challenged the trial court's orders sustaining various objections to his summary judgment proof raised by Scottsdale and Van Ness and Johnson & Sylvan. Dear contends that the trial court erroneously sustained Scottsdale's objections to an "Affidavit of William

C. Dear" that Dear offered to oppose Scottsdale's motion for summary judgment. Dear, however, failed to include Scottsdale's objections in the appellate record. Without having Scottsdale's objections before us, we cannot determine the substance of those objections and whether the trial court erroneously sustained them. Because Dear has failed to bring forward a sufficient record to show that the trial court committed reversible error, he has waived this point of error. *See* Tex.R.App.P. 50(d).

Dear further contends that the trial court erroneously sustained Van Ness and Johnson & Sylvan's objections to a second "Affidavit of William C. Dear" that was offered to oppose Van Ness and Johnson & Sylvan's motion for summary judgment. In opposition to the various motions for summary judgment filed in the trial court, Dear filed two separate, and substantively different, affidavits. Both of these affidavits were entitled "Affidavit of William C. Dear." Van Ness and Johnson & Sylvan filed objections to the affidavit that Dear offered to oppose their motion for summary judgment. Scottsdale filed separate objections to the Dear affidavit offered to oppose its motion for summary judgment.

■ The trial court sustained many of these objections. In complaining of the trial court's rulings, Dear has only specifically described why the trial court erroneously sustained Scottsdale's objections. He does not separately brief why the trial court erroneously sustained Van Ness and Johnson & Sylvan's objections. Dear argues instead that the trial court improperly sustained Van Ness and Johnson & Sylvan's objections for the same reasons set out with respect to Scottsdale's objections.

This briefing is inadequate. As noted above, Scottsdale's objections are not included in the appellate record. But comparing Van Ness and Johnson & Sylvan's objections with the description of Scottsdale's objections offered by Dear in his appellate brief demonstrates that the sets of objections differed substantively. Moreover, each party's objections addressed different affidavits. Dear fails to recognize, address, or brief these differences. Therefore, he has waived this

part of his second point of error. *See* TEX. R.APP.P. 74(f); *Malouf v. Dallas Athletic Country Club*, 837 S.W.2d 674, 678 (Tex. App.—Dallas 1992, writ dism'd w.o.j.) (party presents nothing for appellate review when he fails to cite any authority in support of a point of error). We overrule Dear's second point of error.

We affirm the judgment in part, reverse it in part, and remand for proceedings consistent with this opinion.