TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-98-00686-CV






Carol Ann Milner, Appellant



v.



City of Leander; Axia Services, Inc.; and Texas Municipal League


Intergovernmental Risk Pool, Appellees







FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 277TH JUDICIAL DISTRICT


NO. 96-043-C277, HONORABLE JOHN R. CARTER, JUDGE PRESIDING







 Appellant Carol Ann Milner sued appellees (1) under statutory causes of action
seeking review and reassessment of a workers' compensation claim and under a common law
cause of action for breach of the duty of good faith and fair dealing in handling the claim. (2) The
trial court granted partial summary judgments on the tort claim in favor of each appellee. The
trial court also rendered a partial summary judgment on a legal issue relating to one statutory
cause of action but then dismissed the entire cause for lack of jurisdiction. Milner appeals all five
rulings. We will reverse the order of dismissal, affirm the three summary judgments on the tort
claim, affirm the partial summary judgment on the statutory cause of action, and remand the cause
for further proceedings on the remaining issues in the statutory causes of action.


BACKGROUND


 Carol Ann Milner was employed by appellee City of Leander in its police
department as a dispatcher/secretary. On July 8, 1992, Milner suffered an on-the-job injury and 
sought compensation. On November 12, 1993, Milner's chiropractor certified that Milner had
an impairment rating of thirteen percent. At the benefits review conference, Axia made an oral
request that Milner be re-examined. The benefits review officer construed this request as a
dispute of the impairment rating certified by Milner's chiropractor and assigned a designated
doctor. Milner did not question the initial impairment rating challenge or the appointment of the
designated doctor. On March 24, 1994, a second benefit review conference was held, at which
the designated doctor reported that he had certified Milner's impairment rating to be only five
percent. 

 Milner disagreed with the designated doctor's impairment rating, and a contested
case hearing was held. The hearing officer determined that: (1) the first impairment rating had
not become final; (2) the designated doctor had been properly appointed; (3) the designated
doctor's report was not overcome by the great weight of other medical evidence; (4) Milner's
correct rating was five percent impairment; and (5) Milner did not have a disability after August
7, 1992. Dissatisfied with the results of the hearing, Milner sought review by an appeals panel
of the Texas Workers' Compensation Commission. The appeals panel affirmed the decision, and
Milner brought suit in the district court in Williamson County.

 In her petition, Milner asserted four causes of action. In her first cause of action,
Milner claimed that appellees had breached their duty of good faith and fair dealing in handling
her compensation claim. Milner also alleged that several errors occurred in the administrative
proceedings; she sought a trial de novo on the issue of impairment in her second cause of action
and a substantial-evidence review of procedural and legal issues in her third cause of action. In
her final cause of action, Milner sought a declaratory judgment on issues relating to both her
common law tort claim and her statutory workers' compensation claims.

 In January 1997, the trial court granted summary judgments in favor of all three
appellees on the good-faith-and-fair-dealing cause of action. Although the summary judgments
disposed of the tort claim, neither side requested severance of that action. On November 2, 1998,
the trial court also granted a partial summary judgment on one of Milner's administrative
complaints, finding that appellee's oral request at the benefits review conference was sufficient
under the Texas Administrative Code to dispute the impairment rating made by Milner's
chiropractor. The same day, the trial court ordered that Milner's cause be dismissed for lack of
jurisdiction because she had failed to comply with the Labor Code requirement that a copy of the
pleadings in a workers' compensation action be filed simultaneously with the court and with the
Commission and served on any opposing parties. See Tex. Labor Code Ann. § 410.253 (West
1996). 

 Because the first three summary judgments disposed of Milner's common law cause
of action and the dismissal disposed of the remaining statutory causes, there was a final,
appealable judgment disposing of all parties and issues in the suit. (3) See Hervey v. Flores, 975
S.W.2d 21, 24 (Tex. App.--El Paso 1998, pet. denied) (stating that series of piecemeal orders may
constitute final, appealable judgment). Milner appealed to this Court. In four issues, Milner
challenges the summary judgments and the order of dismissal.

 A dismissal of a cause does not constitute a decision on the merits. As our supreme
court has noted many times, "[i]t is elementary that a dismissal is in no way an adjudication of
the rights of parties; it merely places the parties in the position that they were in before the court's
jurisdiction was invoked just as if suit had never been brought." Crofts v. Eighth Court of Civil
Appeals, 362 S.W.2d 101, 104 (Tex. 1962). In ordering dismissal of Milner's cause of action
based on lack of jurisdiction, the district court implicitly vacated its earlier rulings. Thus, the
partial summary judgment on the statutory claim is not properly before us. Nevertheless, the
Texas Supreme Court has directed the courts of appeals to decide the appeal of underlying rulings
even though the entire cause was dismissed for lack of jurisdiction. See Lone Star Gas Co. v.
Railroad Comm'n, 767 S.W.2d 709, 710 (Tex. 1989).


DISCUSSION


Dismissal for lack of jurisdiction

 In her first issue, Milner contends that the trial court erred in dismissing her
statutory causes for lack of jurisdiction because she failed to comply with section 410.253. We
agree, and appellees concede that dismissal was incorrect. The Texas Supreme Court recently
held that section 410.253 is mandatory and that a copy of a workers' compensation petition must
be filed with the Commission on the same day it is filed in the trial court, but the court also held
that failure to comply with this mandate does not deprive the trial court of jurisdiction. See
Albertson's, Inc. v. Sinclair, 984 S.W.2d 958, 962 (Tex. 1999); see also Dubai Petroleum Co.
v. Kazai, 43 Tex. S. Ct. J. 412, 414-15 (Feb. 10, 2000) (overruling Mingus v. Wadley, 285
S.W.2d 1084 (Tex. 1926), to extent that Mingus held that plaintiff's failure to comply with
statutory prerequisites could deprive trial court of jurisdiction). We therefore sustain Milner's
first issue and reverse the trial court's order of dismissal.


Sovereign Immunity

 In her third issue, Milner argues that the trial court erred in granting summary
judgment on her bad faith cause of action in favor of the City and the Pool on the basis of
sovereign immunity. The facts in this case are not in dispute, and Milner does not contend that
the City or Pool could not be immune. Instead, Milner's sole argument is that the relevant
statutes reveal a clear and unambiguous waiver of the governmental entities' immunity from suit. 
Statutory construction is a question of law. See Johnson v. City of Fort Worth, 774 S.W.2d 653,
656 (Tex. 1989). Therefore, we review de novo the judgment granting the City and the Pool
immunity. See Natividad v. Alexsis, Inc., 875 S.W.2d 695, 699 (Tex. 1994); Nixon v. Mr.
Property Management Co., 690 S.W.2d 546, 548-49 (Tex. 1985).

 The decision to waive immunity is left to the legislature. See Texas Dep't of Health
v. Doe, 994 S.W.2d 890, 892 (Tex. App.--Austin 1999, pet. filed); Texas Dep't of Health v. Ruiz,
960 S.W.2d 714, 715 (Tex. App.--El Paso 1997, writ denied). The legislature must use clear and
unambiguous language to effect a waiver of immunity. See City of LaPorte v. Barfield, 898
S.W.2d 288, 291 (Tex. 1995). However, "[t]he rule requiring a waiver of governmental
immunity to be clear and unambiguous cannot be applied so rigidly that the almost certain intent
of the Legislature is disregarded. Legislative intent remains the polestar of statutory
construction." Id. at 292. To determine legislative intent, we look to the plain language of the
statute. See Surgitek, Bristol-Myers Corp. v. Abel, 997 S.W.2d 598, 602 (Tex. 1999).

 Milner's argument is as follows: In adopting the Political Subdivisions Law (4)
requiring that governmental entities provide workers' compensation coverage to their employees,
the legislature clearly and unambiguously waived governmental immunity for compensation
claims. See Barfield, 898 S.W.2d at 294. The legislature then amended the Political Subdivisions
Law to incorporate chapter 416 of the Labor Code. See Tex. Lab. Code Ann. § 504.002(a)(7)
(West Supp. 2000). Chapter 416 of the Labor Code limits the amount recoverable from an
insurance carrier for claims of breach of the duty of good faith and fair dealing in handling
workers' compensation claims and states that claims against a governmental entity for a breach
are subject to chapters 101 and 104 of the Civil Practice and Remedies Code. See id. § 416.002
(West 1996). The Workers' Compensation Act (5) defines "insurance carrier" to include
governmental entities that self-insure; thus appellee City of Leander is an insurance carrier for
these purposes. See id. § 401.011(27) (West Supp. 2000). Because chapter 416 places limits on
recoveries against "insurance carriers," makes specific reference to bad faith causes of action
against "a governmental entity or unit," and makes references to chapter 101 (which limits
damages) and to chapter 104 (which contains indemnity and defense provisions), Milner contends
that the legislature could have had no other intent in incorporating that chapter into the Political
Subdivisions Law than to waive sovereign immunity and allow bad faith and unfair dealing claims
to be brought against municipalities. We disagree.

 Milner relies on City of LaPorte v. Barfield for the proposition that the legislature
can implicitly waive immunity. See Barfield, 898 S.W.2d at 292. In Barfield, the supreme court
considered whether the legislature's incorporation of the Anti-Retaliation Law by the Political
Subdivisions Law constituted a waiver of immunity for anti-retaliation claims. See id. at 295. 
In making its determination, the court was guided by the principle that, even if the legislature was
not perfectly clear, it could still waive immunity by drafting a statute that could have no other
possible purpose. See id. at 292. The Barfield court considered whether the legislature waived
immunity by: (1) adopting the Anti-Retaliation Law itself, (2) incorporating that Law into the
Political Subdivisions Law, or (3) providing for an election of remedies between the Law and the
Whistleblower Act. See id. at 293-98. (6) We will use this same approach in evaluating Milner's
argument.


(a)  Does Chapter 416 waive sovereign immunity?

 Chapter 416 contains no express waiver of governmental immunity for breach of
the duty of good faith and fair dealing in handling workers' compensation claims. We next
consider whether chapter 416, taken as a whole, can have no other purpose than to waive
immunity. See Barfield, 898 S.W.2d at 292. Within the context of the Workers' Compensation
Act, the term "insurance carrier" includes a government entity that self-insures. See Tex. Lab.
Code Ann. § 401.011. Section 416.002(a) limits the amount that can be recovered from an
"insurance carrier" for breach of the duty of good faith and fair dealing. See id. § 416.002(a). 
Read alone, this subsection implies that government entities as "insurance carriers" could be held
liable for such breaches. However, subsection 416.002(b) states that bad faith actions against
government entities are governed by chapters 101 and 104 of the Civil Practice and Remedies
Code. See id. § 416.002(b).

 Chapter 101, also known as the Tort Claims Act (TCA), provides statutory
exceptions to the traditional common-law rule that governments enjoy immunity from suit. The
supreme court has determined that the TCA does not provide a general waiver of immunity from
bad faith claims and that such claims are not personal injuries arising from misuse of personal
property, for which immunity is waived. See University of Tex. Med. Branch v. York, 871
S.W.2d 175, 179 (Tex. 1994).

 Chapter 104 mandates that the state has a duty to indemnify for torts only if they
are committed in the course and scope of employment and are the result of negligence. (7) See Tex.
Civ. Prac. & Rem. Code Ann. § 104.002(a)(2) (West 1997). If a state employee acts willfully,
wantonly, or with gross negligence, the state has no duty to indemnify. (8) See id. Under chapter
104, the state cannot be required to indemnify for a bad faith claim against an employee because
bad faith is an intentional tort requiring proof that the insurer "knew or should have known" that
it had no reasonable basis for denying or delaying payment of a claim. See Transportation Ins.
Co. v. Moriel, 879 S.W.2d 10, 18 (Tex. 1994). In addition, section 104.008 states that chapter
104 "does not waive a defense, immunity, or jurisdictional bar available to the state." Tex. Civ.
Prac. & Rem. Code Ann. § 104.008 (West 1997) (emphasis added). Reading section 416.002 in
light of chapters 101 and 104, we do not believe the legislature's only possible intent in adopting
chapter 416 was to waive immunity.


(b)  Waiver by incorporation?

 We next consider whether the legislature expressed a clear intent to waive immunity
by incorporating chapter 416 into the Political Subdivisions Law. Milner argues that the reason
the supreme court rejected the waiver-by-incorporation argument in Barfield was that the Anti-Retaliation Law said that a "person" could be in violation, but the Political Subdivision Law did
not equate "person" with "political subdivision." See Barfield, 898 S.W.2d at 295. Milner
contends there is no such problem here because the Workers' Compensation Act specifically
defines person to include a "governmental entity or unit" and defines "insurance carrier" to
include self-insured municipalities. We disagree with Milner's reading of Barfield. The
definitional issue in Barfield merely supported the supreme court's view that the legislature had
expressed no clear intent to waive immunity. See id. at 295-96. The supreme court's reason for
rejecting the waiver-by-incorporation argument was that it was a "putative purpose argument" that
it had previously rejected. See id. at 295; Duhart v. State, 610 S.W.2d 740, 742-43 (Tex. 1980). 
The supreme court clearly held in both Barfield and Duhart that mere incorporation of a provision
of one statute into another does not express a clear and unambiguous intent to waive immunity for
the incorporated statute. See Barfield, 898 S.W.2d at 295; Duhart, 610 S.W.2d at 742.

 Waiver of immunity is not the only possible purpose accomplished by the
incorporation of chapter 416. The Political Subdivisions Law mandates that municipalities
provide their employees with workers' compensation coverage but provides that municipalities
may achieve this end by: (1) becoming a self-insurer, (2) securing workers' compensation
insurance from a private carrier, or (3) entering into a pooling arrangement with other self-insured
political subdivisions. See Tex. Lab. Code Ann. § 504.011 (West 1996). Incorporation of
chapter 416 ensures that private insurance carriers are treated the same under their contracts
providing municipalities with workers' compensation coverage as they are under their contracts
providing private employers with such coverage. Because Milner's argument depends on a
reading of Barfield that we have rejected, we find nothing to distinguish it from the putative
purpose argument rejected by Duhart and Barfield.


(c)  Election of Remedies

 In Barfield, the supreme court ultimately concluded that the legislature waived
immunity to Anti-Retaliation suits by providing for an election of remedies between the Anti-Retaliation Law and the Whistleblower Act, for which immunity had clearly been waived. See
Barfield, 898 S.W.2d at 298. The court decided that "it would make little sense to require an
employee to elect between an action barred by immunity and one not barred." Id. Having
evaluated and rejected a number of possible arguments for waiver, the court specifically stated that
it was persuaded by this election of remedies provision. See id. There is no election of remedies
here, and the other arguments raised by Milner have no more convinced us than they did the
supreme court in Barfield. We overrule appellant's third issue.


Adjustor's Duty

 In her fourth issue, Milner claims that the trial court erred in rendering summary
judgment that Axia, as an adjustor, did not owe her a duty of good faith and fair dealing. We
disagree.

 Workers' compensation insurance carriers owe injured employees a duty of good
faith and fair dealing in processing compensation claims. See Aranda v. Insurance Co. of N. Am.,
748 S.W.2d 210, 211-12 (Tex. 1988). However, the "special relationship" that gives rise to this
duty exists only because the insured and the insurer are parties to a contract that is the result of
unequal bargaining power and by its nature allows unscrupulous insurers to take advantage of their
insureds. See Natividad, 875 S.W.2d at 697-98. Unless an adjustor and the compensation
claimant have a special relationship arising out of a contract, the adjustor owes the claimant no
duty of good faith and fair dealing. See id. at 698.

 Here, as in Natividad, Milner and Axia have neither a special relationship nor a
contract. Applying the Natividad model, the parties to this contract were Milner, the City, and
the Pool. The City and the Pool, as insurance carriers, had a non-delegable duty to handle
Milner's claim fairly and in good faith. See id. However, as discussed above, both entities are
immune from suit for breaches of this duty. Milner contends that this Court should hold Axia
liable in their stead. This we cannot do because the results would be both absurd and unfair. If
we held as Milner suggests, claimants whose claims are adjusted directly by an immune political
subdivision would be without recourse, while those whose claims are adjusted by a non-immune
third party would be free to sue. Such a holding would penalize adjustors who contract with an
immune political subdivision while rewarding those who work only with private employers. 
Milner argues that this Court ought to shift the insurance carrier's non-delegable duty in this case
because if we do not, she is without recourse. This argument is often made in cases in which the
government is immune; however, the decision to abrogate sovereign immunity and allow recourse
to the courts is within the legislature's sole province. See Federal Sign v. Texas S. Univ., 951
S.W.2d 401, 409 (Tex. 1997). We overrule Milner's fourth issue.


Oral Dispute of Impairment Rating 

 The trial court granted partial summary judgment in favor of appellees, finding they 
had orally disputed Milner's impairment rating at the benefit review conference and that this oral
dispute satisfied Rule 130.5(d). See 28 Tex. Admin. Code § 130.5(d) (1999). The trial court
then proceeded to erroneously dismiss Milner's statutory causes of action without deciding the
case on the merits. At the urging of all parties, we reverse the dismissal but will determine the
propriety of the trial court's ruling on the impairment rating. See Lone Star, 767 S.W.2d at 710.

 In her second issue, Milner contends that appellees gave her no notice of an intent
to dispute her impairment rating prior to the benefit review conference and appellees were
therefore precluded from raising the issue. In addition, Milner argues that because it was oral,
the request that Milner be examined by another doctor was not sufficient to dispute the initial
impairment rating and prevent it from becoming final. We disagree with both of Milner's
contentions.

 For her first argument, Milner cites rule 141.1, which states, "a request for a
benefit review conference shall: . . . (2) identify and describe the disputed issue or issues." 28
Tex. Admin. Code § 141.1(b)(2) (1999). Milner argues that this section can have no other
meaning than to set an agenda for the conference and limit its scope to disputed issues contained
in the notice. The appeals panel disagreed with Milner's interpretation stating, "[a] BRC is a
proper place for a party to raise whatever dispute exists at the time of the conference . . . ."

 An agency's reasonable interpretation of its own rules is entitled to deference by
the courts. See Public Util. Comm'n v. Gulf States Utils. Co., 809 S.W.2d 201, 207 (Tex. 1991); 
Texas Dep't of Pub. Safety v. Zhao, 994 S.W.2d 357, 360 (Tex. App.--Austin 1999, no pet.). The
reviewing court is limited to determining whether the administrative interpretation "is plainly
erroneous or inconsistent with the regulation." See Gulf States Utils., 809 S.W.2d at 207 (citing
United States v. Larionoff, 431 U.S. 864, 872 (1977)).

 The appeals panel's interpretation of rule 141.1 is reasonable. Nowhere does rule
141.1 state--as Milner contends--that the scope of a conference is limited to issues annunciated in
the notice. Indeed, such an interpretation conflicts with the Labor Code, which states, "[a] benefit
review conference is a nonadversarial, informal dispute resolution proceeding designed to . . .
delineate disputed issues." Tex. Lab. Code Ann. § 410.021 (West 1996) (emphasis added). As
Milner notes in her own brief, it is well settled that a rule may not impose additional burdens,
conditions, or restrictions in excess of or inconsistent with the relevant statute. See Southwestern
Bell Tel. Co. v. Public Util. Comm'n, 888 S.W.2d 921, 926 (Tex. App.--Austin 1994, writ
denied). According to Milner, the rule sets a formal agenda for a conference and requires that
the disputed issues be determined prior to the conference. This interpretation contradicts section
410.021 and imposes additional restrictions not required by the rule or statute. The appeals
panel's interpretation that the rule does not limit a benefit review conference to issues raised in
the notice comports with the plain language of both the rule and the statute, and we defer to that
interpretation.

 Milner further argues that rule 130.5 requires an impairment rating to be disputed
in writing within ninety days to prevent it from becoming final. See 28 Tex. Admin. Code
§ 130.5 (1999). In its summary judgment, the district court found the evidence was
uncontroverted that the City orally disputed the impairment rating and held that the "oral dispute
satisfies Tex. W.C. Comm'n, 28 Tex. Admin. Code §130.5(d)." Milner argues that subsection
(a) of the rule mandates that disputes be filed in writing and that subsection (e) dictates that
undisputed impairment ratings become final after ninety days. See Tex. Admin. Code § 130.5(a),
(e). Milner did not make arguments under either of these sections in her response to the City's
motion for summary judgment, nor does she contest on appeal the propriety of the court's holding
that the oral dispute satisfied rule 130.5(d). On appeal, we cannot consider any ground for
reversal that was not expressly presented to the trial court by written motion, answer, or other
response to the motion for summary judgment. See City of Houston v. Clear Creek Basin Auth.,
589 S.W.2d 671, 677 (Tex. 1979); Turner v. Texas Dept. of Mental Health & Mental
Retardation, 920 S.W.2d 415, 420 (Tex. App.--Austin 1996, writ denied).

 Even if we could consider Milner's argument, we would not find it persuasive. 
Rule 130.5(e) states, "[t]he first impairment rating assigned to an employee is considered final if
the rating is not disputed within 90 days after the rating is assigned." Tex. Admin. Code
§ 130.5(e) (1999). This subsection does not state that a dispute must be in writing. In fact, none
of the rules or statutes dealing with an impairment-rating "dispute" defines the term or requires
such a dispute be in writing. (9) The dictionary defines dispute, when used as a verb, to mean "to
call into question" and, when used as a noun, to mean "a verbal controversy." Webster's Third
New International Dictionary 655 (Philip B. Gove ed., 1961) (emphasis added). Thus, the plain
meaning of the term "dispute" does not imply that a dispute must be in writing.

 Milner's initial impairment rating was certified November 13, 1993. The first
benefits review conference was held January 10, 1994. Milner does not contest the fact that a
proper dispute at the January conference would be within the ninety-day window. At the January
conference, appellee's attorney requested that Milner get "a second opinion." (10) Milner admitted
that the benefit review officer made some explanation of the designated doctor process. Clearly
Milner and the Commission were both made aware of the dispute within ninety days. We
overrule Milner's second issue.


CONCLUSION


 Having sustained Milner's first issue and overruled her second, third, and fourth
issues, we reverse the order of dismissal of the statutory causes, affirm the summary judgments
regarding the bad faith claim and rule 130.5, and remand the cause to the trial court for further
proceedings on the remaining issues in Milner's statutory causes of action.



 

 Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Yeakel

Affirmed in Part; Reversed and Remanded in Part 

Filed: March 23, 2000

Do Not Publish Released for publication October 5, 2000. Tex. R. App. P. 47.3(c).

1. Appellee City of Leander was Milner's employer and is a member of appellee Texas
Municipal League Intergovernmental Risk Pool (the Pool). Appellee Axia Services, Inc. acted
as adjustor on Milner's claim under a contract between Axia and the Pool. For convenience, we
will refer to these parties collectively as "appellees."
2. In her petition, Milner alleged four causes of action--one for bad faith, two relating to
statutorily defined procedures under the Workers' Compensation Act, and one for declaratory
judgment involving elements of the common law and statutory causes of action. For simplicity,
we will group the claims broadly as the common law tort cause of action and the statutory
workers' compensation causes of action. 
3. Because Milner's declaratory judgment action involved the same issues as the common law
and compensation causes of action, the denial of relief on those causes effectively disposed of the
issues in the declaratory judgment action. 
4. Tex. Lab. Code Ann. §§ 504.001-.073 (West 1996 & Supp. 2000).
5. Tex. Lab. Code Ann. §§ 401.001- 418.002 (West 1996 & Supp. 2000).
6. The court held that neither adoption of the Anti-Retaliation Law nor its incorporation into
the Political Subdivisions Law waived immunity but ultimately held that the legislature must have
intended to waive immunity when it provided that plaintiffs had to elect as between the Anti-Retaliation Law and the Whistleblower Act, for which immunity had clearly been waived. See
Barfield, 898 S.W.2d at 298.
7. The state must also indemnify for non-negligent acts if they either deprive someone of a
constitutionally protected right or if the attorney general or a designee has determined that
indemnification is in the state's best interest. See Tex. Civ. Prac. & Rem. Code Ann. § 104.002
(a)(2), (3) (West 1997). Neither of these alternatives applies in this case. 
8. Although chapter 104 concerns the state's duty to indemnify, chapter 102, governing a
municipality's duty, contains a similar requirement that the tort be committed within the scope of
employment and be one of negligence. See Tex. Civ. Prac. & Rem. Code Ann. § 102.002(a)
(West Supp. 2000).
9. See Tex. Labor Code Ann. §§ 408.121 (prescribing when impairment income benefits must
be paid), 408.122 (establishing eligibility requirements for impairment income benefits), 408.125 
(describing contingencies when rating is disputed) (West 1996); 28 Tex. Admin. Code §§ 130.5
(discussing contingencies when rating is disputed), 130.6 (establishing general provisions for
appointment of designated doctor) (1999). 
10. Milner, who was not represented, contends that the word "dispute" was never used, that
she did not understand that the request for a second examination could lead to her impairment
rating being lowered, and that the benefit review officer did not explain the situation. The issue
of whether the benefit review officer informed Milner of her rights and responsibilities was not
addressed by the trial court, and we offer no opinion on the subject. See Tex. Lab. Code Ann.
§ 410.026 (West 1996) (establishing powers and duties of benefit review officer). 


ustained Milner's first issue and overruled her second, third, a