TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-04-00810-CV






Jon Maniccia and Southwest Intelecom, Inc., Appellants


v.


John Collins, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT

NO. GN401779, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N


 John Collins and Jon Maniccia were the owners of Southwest Intelecom, Inc.,
("Intelecom"). As part of its business operations, Intelecom received periodic payments from
various collection agencies, including Billing Concepts; Integretel, Inc. ("Integretel"); and Aargon
Collection Agency ("Aargon"). In 2002, Collins and Maniccia began having disagreements over
how to run Intelecom. As a result of these differences, in July 2002, Collins, Maniccia, and
Intelecom entered into a Stock Repurchase Agreement and Mutual Release (the "Agreement") under
which Collins agreed to sell all of his stock back to Intelecom. As compensation, Collins was
entitled to receive one-half of whatever amount of money Billing Concepts, Integretel, and Aargon
paid Intelecom. After the Agreement was signed, Intelecom received $81,000 from Billing
Concepts, $42,533.28 from Integretel, and $7,148.04 from Aargon for a total of $130,681.32.

 Collins asked Intelecom to pay him one-half of the amounts paid to Intelecom by the
previously mentioned companies, but Intelecom refused to pay him. Eventually, Collins filed suit
against Intelecom and Maniccia, seeking to recover one-half of the money received by Intelecom. 
He also filed a motion for summary judgment, which the district court ultimately granted. In its
judgment, the court ordered that Collins was entitled to one-half of the $130,681.32 collected
($65,340.66) plus attorney's fees. Intelecom and Maniccia appeal the judgment of the district court.


STANDARD OF REVIEW

 The standards for obtaining a traditional summary judgment are well established: the
movant must show that there is no genuine issue of material fact and that he is entitled to judgment
as a matter of law; in deciding whether there is a disputed material fact issue precluding summary
judgment, the court must take evidence favorable to the nonmovant as true, indulge every reasonable
inference in favor of the nonmovant, and resolve any doubts in the nonmovant's favor. Sergeant
Enters., Inc. v. Strayhorn, 112 S.W.3d 241, 245 (Tex. App.--Austin 2003, no pet.) (citing Cathey
v. Booth, 900 S.W.2d 339, 341 (Tex. 1995); Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548-49
(Tex. 1985)); see Tex. R. Civ. P. 166a(c). If the movant establishes a right to summary judgment,
the burden shifts to the nonmovant, who must present summary-judgment evidence to the trial court
raising a genuine issue of material fact to preclude summary judgment. Cannon v. Texas Indep.
Bank, 1 S.W.3d 218, 223 (Tex. App.--Texarkana 1999, pet. denied). If the evidence raises no more
than a surmise or suspicion of a fact in issue, no genuine issue of fact exists to defeat summary
judgment. Selz v. Friendly Chevrolet, Ltd., 152 S.W.3d 833, 837 (Tex. App.--Dallas 2005, no pet.)
(citing Wiggins v. Overstreet, 962 S.W.2d 198, 200 (Tex. App.--Houston [14th Dist.] 1998,
writ denied)). We review the trial court's decision to grant summary judgment de novo. Sergeant
Enters., Inc., 112 S.W.3d at 245 (citing Natividad v. Alexsis, Inc., 875 S.W.2d 695, 699 (Tex. 1994)).


DISCUSSION

 On appeal, Maniccia and Intelecom contend that the district court erred when it
granted Collins's summary-judgment motion. Essentially, they argue that the district court
improperly interpreted the portion of the Agreement specifying what amounts Collins was entitled
to recover. In their first argument, they contend that the Agreement unambiguously requires that
certain offsets be applied before Collins recovers his award. Alternatively, Maniccia and Intelecom
contend that if the language does not unambiguously require offsets to Collins's recovery, the
language is ambiguous as to what effect the listing of certain costs in the Agreement has on Collins's
recovery. Because of this ambiguity, they urge this Court to consider extrinsic evidence to ascertain
the meaning of the relevant provision, including an email sent by Collins to Intelecom's lawyer.

 Determining whether a contract is ambiguous is a question of law for courts to decide. 
General Agents Ins. Co. v. Arredondo, 52 S.W.3d 762, 766 (Tex. App.--San Antonio 2001,
pet. denied). If a contract is subject to more than one reasonable interpretation, then it is ambiguous. 
Id. However, a contract is unambiguous if it can be given a definite or certain meaning, and
conflicting interpretations of a contract by the parties, without more, do not create an ambiguity. See
id. If a contract is unambiguous, courts must enforce the contract as written. Trinity Indus., Inc. v.
Ashland, Inc., 53 S.W.3d 852, 859 (Tex. App.--Austin 2001, pet. denied). Further, if the contract
is unambiguous, parole evidence may not be admitted for the purpose of creating an ambiguity. 
National Union Fire Ins. Co. v. CBI Indus., Inc., 907 S.W.2d 517, 520 (Tex. 1995). It is only after
a court has determined that an agreement is ambiguous that a court may consider extraneous
evidence to determine the meaning of the agreement. Id.

 The Agreement explains that Collins was entitled to recover one-half of any money
Intelecom "received" from Billing Concepts, Integretel, and Aargon. The relevant portion of the
Agreement specifying Collins's compensation provides as follows:


By signing below, Collins agrees to sell his stock to Intelecom for the payment
of one-half of any monies received by Intelecom from Billing Concepts, expressly
acknowledging that Intelecom may receive no monies from Billing Concepts. . . .
To the extent that funds from Billing Concepts are received after the obligation to
RFC is satisfied, payment will be made to Collins within fourteen (14) days
thereafter. . . . These monies will be the sole amounts to be received by Collins in
exchange for his stock, regardless of any other recoveries, payments, profits, or
amounts received by Intelecom or Maniccia at any time after the execution of this
agreement except as expressly follows: as additional consideration for the stock,
Intelecom will also pay one-half of any sums received on account of the billing
records sent to Integretel for collection, to include monies received from Aargon, the
collection agency presently seeking payment on said reports; as additional
consideration for the stock, Intelecom will pay Collins one-half of any sums received
on the judgment that has been taken against Frank Murillo in Southwest Intelecom
v. Murillo . . . .



(Emphasis added.)

 However, Maniccia and Intelecom both insist that, under the Agreement, Collins's
recovery was subject to offsets both before and after Intelecom received money from Billing
Concepts, Integretel, and Aargon. First, Maniccia and Intelecom argue that before paying Intelecom,
Billing Concepts was required to apply the money collected to two of Intelecom's financial
obligations. The first obligation was to RFC, which is a third-party vendor. The second obligation
was to the attorney general. Maniccia and Intelecom insist that the obligation to pay the attorney
general resulted from an inquiry made by the Consumer Protection Division and that the payments
covered costs incurred through the investigation. They further insist that the district court erred by
failing to reduce Collins's recovery to account for these offsets. The portion of the Agreement
relevant to this argument provides as follows:


Said payment from Billing Concepts to Intelecom will be made upon full satisfaction
of Intelecom's obligations to RFC and the Texas Attorney General's office. . . . 
Money received from RFC Capital or the Attorney General of Texas on account of
overpayment of funds to them by Billing Concepts will be considered monies
received from Billing Concepts for purposes of this paragraph.



 Collins disagrees with Maniccia and Intelecom's interpretation of the language 
above. He asserts that the quoted portions of the Agreement only affected the timing of his ultimate
recovery, not the amount of his ultimate recovery. Essentially, he argues that the sentence merely
described the circumstances under which Billing Concepts was obligated to pay Intelecom and
related that Billing Concepts was not obligated to pay Intelecom until after Intelecom had satisfied
its own financial obligations to RFC and the attorney general.

 As a preliminary matter, we note that the language Maniccia and Intelecom claim
proves that Collins's award was subject to pre-payment offsets only refers to payments from Billing
Concepts and makes no reference to money Intelecom received from Aargon and Integretel. 
Consequently, we fail to see how Maniccia and Intelecom's interpretation would justify reducing
Collins's entitlement to half the money Aargon and Integretel paid to Intelecom. Regardless, we
need not determine which of the parties' competing interpretations correctly reflects their intentions
when entering the Agreement. No matter which interpretation is correct, the Agreement
unambiguously states that Collins is entitled to "one-half of any monies received from Billing
Concepts," Integretel, and Aargon. It is undisputed that Intelecom received $81,000 from Billing
Concepts, $42,533.28 from Integretel, and $7,148.04 from Aargon, and Collins is, therefore, entitled
to one-half of the total of those three amounts. If Billing Concepts was under some obligation to
apply the money that it collected to satisfy some of Intelecom's financial obligations but failed to
comply with that requirement--a determination we cannot make in this appeal--that failure cannot
be used to undo the fact that Intelecom received $81,000 from Billing Concepts, nor can it be used
to justify a type of after-payment offset not authorized by the Agreement between Collins, Maniccia,
and Intelecom.

 In addition to before-payment offsets, Maniccia and Intelecom also assert that the
Agreement provides for offsets to Collins's recovery that were to be applied after Billing Concepts,
Aargon, and Integretel transferred the money they collected to Intelecom and further assert that
Collins was only entitled to recover if the amount Intelecom collected was greater than the value of
the offsets. Specifically, Maniccia and Intelecom insist that, before paying Collins, they were
required to use the money they collected to pay delinquent-contractor commissions and certain legal
fees. The portion of the Agreement relevant to this argument provides as follows:


Intelecom further guarantees that--until Collins receives his half--such funds will
not be used to satisfy any of its other accumulated debts, aside from delinquent
contractor commissions and legal fees incurred solely as a result of the pending
Illinois case and the RFC/[Billing Concepts] disputes.


 We disagree with Maniccia and Intelecom's interpretation. First, we note that as
discussed previously, the relevant sentence quoted above makes no reference to money collected
from Aargon and Integretel. The sentence is found immediately after the sentences describing
Collins's entitlement to half the money collected from Billing Concepts, and the phrase "such funds"
is a specific reference to that money. Moreover, the relevant sentence comes well before the
sentence stating that Collins was entitled to one-half of the funds transferred from Aargon and
Integretel, and that subsequent sentence provides no modification to Collins's entitlement to those
funds. For all these reasons, we believe that the provision previously quoted has no bearing on
Collins's entitlement to one-half of the money Intelecom received from Aargon and Integretel.

 Second, we also disagree with Maniccia and Intelecom's construction of the sentence
as authorizing an offset to Collins's entitlement to the money Intelecom received from Billing
Concepts. The primary component of the sentence ensures that before Collins was able to collect
his entitlement, Intelecom did not use the money received from Billing Concepts to pay Intelecom's
debts. Further, although the sentence does list delinquent-contractor commissions and legal fees as
exceptions to this hold requirement, the sentence in no way states that Collins's entitlement to one-half of the money collected from Billing Concepts should be reduced to account for those costs. On
the contrary, the sentence again clarifies that Collins is entitled to a full, unadjusted half of the funds
received from Billing Concepts by including the phrase "until Collins receives his half" in reference
to those funds. While the sentence may have authorized Intelecom to use its one-half of the money
received from Billing Concepts to pay delinquent commissions and legal fees, it does not authorize
Intelecom to use Collins's half of the funds for these same purposes.

 For these reasons, we conclude that the relevant language of the Agreement can be
given a definite and certain meaning and is, therefore, unambiguous. Therefore, we need not address
Maniccia and Intelecom's alternative assertion that the Agreement is ambiguous and that parole
evidence should be used to ascertain the meaning of the Agreement. We further conclude that
nothing in the Agreement authorizes a reduction to Collins's entitlement to the money Intelecom
received from Aargon and Integretel and that the Agreement does not allow for offsets to Collins's
recovery after Intelecom received money from Billing Concepts. In light of the preceding, we must
conclude that there is no genuine issue of material fact relating to Collins's recovery and that he was
entitled to one half of the money collected from Billing Concepts, Integretel, and Aargon as a matter
of law. Accordingly, we affirm the judgment of the district court.



 

 David Puryear, Justice

Before Chief Justice Law, Justices Patterson and Puryear


Affirmed

Filed: August 17, 2007