# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00810-CV

**Jon Maniccia and Southwest Intelecom, Inc., Appellants**

**v.**

**John Collins, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT
### NO. GN401779, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

John Collins and Jon Maniccia were the owners of Southwest Intelecom, Inc., ("Intelecom"). As part of its business operations, Intelecom received periodic payments from various collection agencies, including Billing Concepts; Integretel, Inc. ("Integretel"); and Aargon Collection Agency ("Aargon"). In 2002, Collins and Maniccia began having disagreements over how to run Intelecom. As a result of these differences, in July 2002, Collins, Maniccia, and Intelecom entered into a Stock Repurchase Agreement and Mutual Release (the "Agreement") under which Collins agreed to sell all of his stock back to Intelecom. As compensation, Collins was entitled to receive one-half of whatever amount of money Billing Concepts, Integretel, and Aargon paid Intelecom. After the Agreement was signed, Intelecom received $81,000 from Billing Concepts, $42,533.28 from Integretel, and $7,148.04 from Aargon for a total of $130,681.32.

Collins asked Intelecom to pay him one-half of the amounts paid to Intelecom by the previously mentioned companies, but Intelecom refused to pay him. Eventually, Collins filed suit against Intelecom and Maniccia, seeking to recover one-half of the money received by Intelecom. He also filed a motion for summary judgment, which the district court ultimately granted. In its judgment, the court ordered that Collins was entitled to one-half of the $130,681.32 collected ($65,340.66) plus attorney's fees. Intelecom and Maniccia appeal the judgment of the district court.

## STANDARD OF REVIEW

The standards for obtaining a traditional summary judgment are well established: the movant must show that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law; in deciding whether there is a disputed material fact issue precluding summary judgment, the court must take evidence favorable to the nonmovant as true, indulge every reasonable inference in favor of the nonmovant, and resolve any doubts in the nonmovant's favor. *Sergeant Enters., Inc. v. Strayhorn*, 112 S.W.3d 241, 245 (Tex. App.—Austin 2003, no pet.) (citing *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985)); *see* Tex. R. Civ. P. 166a(c). If the movant establishes a right to summary judgment, the burden shifts to the nonmovant, who must present summary-judgment evidence to the trial court raising a genuine issue of material fact to preclude summary judgment. *Cannon v. Texas Indep. Bank*, 1 S.W.3d 218, 223 (Tex. App.—Texarkana 1999, pet. denied). If the evidence raises no more than a surmise or suspicion of a fact in issue, no genuine issue of fact exists to defeat summary judgment. *Selz v. Friendly Chevrolet, Ltd.*, 152 S.W.3d 833, 837 (Tex. App.—Dallas 2005, no pet.) (citing *Wiggins v. Overstreet*, 962 S.W.2d 198, 200 (Tex. App.—Houston [14th Dist.] 1998,

writ denied)). We review the trial court's decision to grant summary judgment de novo. *Sergeant Enters., Inc.*, 112 S.W.3d at 245 (citing *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex. 1994)).

## DISCUSSION

On appeal, Maniccia and Intelecom contend that the district court erred when it granted Collins's summary-judgment motion. Essentially, they argue that the district court improperly interpreted the portion of the Agreement specifying what amounts Collins was entitled to recover. In their first argument, they contend that the Agreement unambiguously requires that certain offsets be applied before Collins recovers his award. Alternatively, Maniccia and Intelecom contend that if the language does not unambiguously require offsets to Collins's recovery, the language is ambiguous as to what effect the listing of certain costs in the Agreement has on Collins's recovery. Because of this ambiguity, they urge this Court to consider extrinsic evidence to ascertain the meaning of the relevant provision, including an email sent by Collins to Intelecom's lawyer.

Determining whether a contract is ambiguous is a question of law for courts to decide. *General Agents Ins. Co. v. Arredondo*, 52 S.W.3d 762, 766 (Tex. App.—San Antonio 2001, pet. denied). If a contract is subject to more than one reasonable interpretation, then it is ambiguous. *Id.* However, a contract is unambiguous if it can be given a definite or certain meaning, and conflicting interpretations of a contract by the parties, without more, do not create an ambiguity. *See id.* If a contract is unambiguous, courts must enforce the contract as written. *Trinity Indus., Inc. v. Ashland, Inc.*, 53 S.W.3d 852, 859 (Tex. App.—Austin 2001, pet. denied). Further, if the contract is unambiguous, parole evidence may not be admitted for the purpose of creating an ambiguity. *National Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995). It is only after

3

a court has determined that an agreement is ambiguous that a court may consider extraneous evidence to determine the meaning of the agreement. *Id.*

The Agreement explains that Collins was entitled to recover one-half of any money Intelecom "received" from Billing Concepts, Integretel, and Aargon. The relevant portion of the Agreement specifying Collins's compensation provides as follows:

> By signing below, Collins agrees to sell his stock to Intelecom for the payment of *one-half of any monies received by Intelecom from Billing Concepts*, expressly acknowledging that Intelecom may receive no monies from Billing Concepts. . . . To the extent that funds from Billing Concepts are received after the obligation to RFC is satisfied, payment will be made to Collins within fourteen (14) days thereafter. . . . These monies will be the sole amounts to be received by Collins in exchange for his stock, regardless of any other recoveries, payments, profits, or amounts received by Intelecom or Maniccia at any time after the execution of this agreement except as expressly follows: as additional consideration for the stock, Intelecom will also pay *one-half of any sums received on account of the billing records sent to Integretel for collection, to include monies received from Aargon*, the collection agency presently seeking payment on said reports; as additional consideration for the stock, Intelecom will pay Collins one-half of any sums received on the judgment that has been taken against Frank Murillo in Southwest Intelecom v. Murillo . . . .

(Emphasis added.)

However, Maniccia and Intelecom both insist that, under the Agreement, Collins's recovery was subject to offsets both before and after Intelecom received money from Billing Concepts, Integretel, and Aargon. First, Maniccia and Intelecom argue that before paying Intelecom, Billing Concepts was required to apply the money collected to two of Intelecom's financial obligations. The first obligation was to RFC, which is a third-party vendor. The second obligation was to the attorney general. Maniccia and Intelecom insist that the obligation to pay the attorney

general resulted from an inquiry made by the Consumer Protection Division and that the payments covered costs incurred through the investigation. They further insist that the district court erred by failing to reduce Collins's recovery to account for these offsets. The portion of the Agreement relevant to this argument provides as follows:

> Said payment from Billing Concepts to Intelecom will be made upon full satisfaction of Intelecom's obligations to RFC and the Texas Attorney General's office. . . . Money received from RFC Capital or the Attorney General of Texas on account of overpayment of funds to them by Billing Concepts will be considered monies received from Billing Concepts for purposes of this paragraph.

Collins disagrees with Maniccia and Intelecom's interpretation of the language above. He asserts that the quoted portions of the Agreement only affected the timing of his ultimate recovery, not the amount of his ultimate recovery. Essentially, he argues that the sentence merely described the circumstances under which Billing Concepts was obligated to pay Intelecom and related that Billing Concepts was not obligated to pay Intelecom until after Intelecom had satisfied its own financial obligations to RFC and the attorney general.

As a preliminary matter, we note that the language Maniccia and Intelecom claim proves that Collins's award was subject to pre-payment offsets only refers to payments from Billing Concepts and makes no reference to money Intelecom received from Aargon and Integretel. Consequently, we fail to see how Maniccia and Intelecom's interpretation would justify reducing Collins's entitlement to half the money Aargon and Integretel paid to Intelecom. Regardless, we need not determine which of the parties' competing interpretations correctly reflects their intentions when entering the Agreement. No matter which interpretation is correct, the Agreement

5

unambiguously states that Collins is entitled to "one-half of any monies received from Billing Concepts," Integretel, and Aargon. It is undisputed that Intelecom received $81,000 from Billing Concepts, $42,533.28 from Integretel, and $7,148.04 from Aargon, and Collins is, therefore, entitled to one-half of the total of those three amounts. If Billing Concepts was under some obligation to apply the money that it collected to satisfy some of Intelecom's financial obligations but failed to comply with that requirement—a determination we cannot make in this appeal—that failure cannot be used to undo the fact that Intelecom received $81,000 from Billing Concepts, nor can it be used to justify a type of after-payment offset not authorized by the Agreement between Collins, Maniccia, and Intelecom.

In addition to before-payment offsets, Maniccia and Intelecom also assert that the Agreement provides for offsets to Collins's recovery that were to be applied after Billing Concepts, Aargon, and Integretel transferred the money they collected to Intelecom and further assert that Collins was only entitled to recover if the amount Intelecom collected was greater than the value of the offsets. Specifically, Maniccia and Intelecom insist that, before paying Collins, they were required to use the money they collected to pay delinquent-contractor commissions and certain legal fees. The portion of the Agreement relevant to this argument provides as follows:

> Intelecom further guarantees that—until Collins receives his half—such funds will not be used to satisfy any of its other accumulated debts, aside from delinquent contractor commissions and legal fees incurred solely as a result of the pending Illinois case and the RFC/[Billing Concepts] disputes.

We disagree with Maniccia and Intelecom's interpretation. First, we note that as discussed previously, the relevant sentence quoted above makes no reference to money collected

6

from Aargon and Integretel. The sentence is found immediately after the sentences describing Collins's entitlement to half the money collected from Billing Concepts, and the phrase "such funds" is a specific reference to that money. Moreover, the relevant sentence comes well before the sentence stating that Collins was entitled to one-half of the funds transferred from Aargon and Integretel, and that subsequent sentence provides no modification to Collins's entitlement to those funds. For all these reasons, we believe that the provision previously quoted has no bearing on Collins's entitlement to one-half of the money Intelecom received from Aargon and Integretel.

Second, we also disagree with Maniccia and Intelecom's construction of the sentence as authorizing an offset to Collins's entitlement to the money Intelecom received from Billing Concepts. The primary component of the sentence ensures that before Collins was able to collect his entitlement, Intelecom did not use the money received from Billing Concepts to pay Intelecom's debts. Further, although the sentence does list delinquent-contractor commissions and legal fees as exceptions to this hold requirement, the sentence in no way states that Collins's entitlement to one-half of the money collected from Billing Concepts should be reduced to account for those costs. On the contrary, the sentence again clarifies that Collins is entitled to a full, unadjusted half of the funds received from Billing Concepts by including the phrase "until Collins receives his half" in reference to those funds. While the sentence may have authorized Intelecom to use its one-half of the money received from Billing Concepts to pay delinquent commissions and legal fees, it does not authorize Intelecom to use Collins's half of the funds for these same purposes.

For these reasons, we conclude that the relevant language of the Agreement can be given a definite and certain meaning and is, therefore, unambiguous. Therefore, we need not address

7

Maniccia and Intelecom's alternative assertion that the Agreement is ambiguous and that parole evidence should be used to ascertain the meaning of the Agreement. We further conclude that nothing in the Agreement authorizes a reduction to Collins's entitlement to the money Intelecom received from Aargon and Integretel and that the Agreement does not allow for offsets to Collins's recovery after Intelecom received money from Billing Concepts. In light of the preceding, we must conclude that there is no genuine issue of material fact relating to Collins's recovery and that he was entitled to one half of the money collected from Billing Concepts, Integretel, and Aargon as a matter of law. Accordingly, we affirm the judgment of the district court.

_____

David Puryear, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed: August 17, 2007

8